**UNITED STATES of America,
Plaintiff,**

v.

**Gino AQUINO et al., Defendants.**

**Crim. No. 45878.**

United States District Court,
E. D. Michigan, S. D.

Jan. 17, 1972.

See also D.C., 336 F.Supp. 737.

Arthur J. Koscinski, Detroit, Mich., for Gino Aquino and Arthur Benzi.

Robert W. Larin, Pontiac, Mich., for Anthony McCormick and James Campagna, Jr.

Ronald S. Weiner, S. Allen Early, Jr., Detroit, Mich., for Howard Dixon.

Neil H. Fink, Detroit, Mich., for Kenneth J. Green, Marie Greuling and Clifford W. Terry.

Watson A. Zdrodowski, Allen Park, Mich., for James Moyer.

James K. O'Malley, Pittsburgh, Pa., for John Nagel, Joseph Nagel and Orlando Vigi.

Harry R. Bockoff, Detroit, Mich., for Harold Nicholson.

Sanford Rosenthal, Detroit, Mich., for Peter Paganes.

Henry Paniccia, in pro. per.

Morris H. Shillman, Lawrence Schreidell, Detroit, Mich., for Edward Sarkisian.

Stephan M. Losh, Warren, Mich., for Augie Sermo.

James Stabile, in pro. per.

Richard E. Rosin, Mt. Clemens, Mich., for Arthur Soave.

Donald L. Hobson, Detroit, Mich., for Phillip Zegrofus.

Arnold Shulman, William Jones, Sp. U. S. Attys., for plaintiff.

## OPINION AND ORDER RE WIRE TAP AUTHORIZATION

KENNEDY, District Judge.

Defendants are charged in a two-count indictment with violating Section 1955 of Title 18, United States Code (part of the statute more commonly known as the Omnibus Crime Control and Safe Streets Act of 1968), which prohibits large scale gambling operations where that activity is also a violation of state law. Certain defendants have moved to suppress the contents of judicially approved intercepted telephone conversations, as well as all evidence derived therefrom, on the grounds that the authorizations for the original and the extension orders approving those wire taps[1] failed to conform with the requirements set forth in Section 2516 of Title 18, United States Code. Subsection (1) of that statute provides, in part:

The Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for,

and such judge may grant in conformity with section 2518 of this chapter an order authorizing or approving the interception of wire or oral communications by the Federal Bureau of Investigation, or a Federal agency having responsibility for the investigation of the offense as to which the application is made, when such interception may provide or has provided evidence of [certain enumerated offenses].

Defendants contend that neither the original nor the extension authorizations were made by the Attorney General or an Assistant Attorney General specially designated by the Attorney General and that the court orders issued pursuant to those authorizations were thus improperly granted.

At the hearing on the motions the Court denied the same insofar as they relate to the original authorization. The disclosures made by the Government in response to defendants' motions indicate that, while that formal authorization was not actually signed by either the Attorney General or an Assistant Attorney General, the Attorney General had personally approved the authorization in a memo, signed by him, addressed to Mr. Will Wilson, then an Assistant Attorney General. The statute was thus complied with in that the Attorney General himself had approved the authorization for the request for the original wire tap order.

With respect to the extension, however, the Government admits that the decision to initiate the authorization for the request for the extension was made by Mr. Sol Lindenbaum, Executive Assistant to the Attorney General [not an Assistant Attorney General]. In a sworn affidavit (see appendix) Mr. Lindenbaum stated:

The Attorney General authorized me, pursuant to 28 U.S.C. 510, to act on

---

[1]. Court orders approving wire interceptions are valid for no more than thirty days. After that period an extension may be granted by the court if a second

application is made which meets the same requirements as the original application. Title 18, United States Code, Section 2518(5).

the extension of the interception of wire communications in this matter. Pursuant to the Attorney General's authorization, on April 2, 1971, I approved an action designating Will Wilson to authorize David J. Cook to make the application for extension. In accordance with the Attorney General's directions, I submitted information to him concerning my action as soon as practicable so that he could order the interception terminated if he did not approve of it. He did not direct termination of this interception.

It should further be noted that, while Mr. Lindenbaum admits designating Will Wilson to authorize the extensions, and while Will Wilson's "signature" appears on that authorization, Mr. Henry E. Peterson, then a Deputy Attorney General, has admitted in a sworn affidavit (see appendix) that it was actually he, acting under the authorization of Will Wilson, who signed Mr. Wilson's name to the authorization. There is no indication of what communication, if any, transpired between Mr. Lindenbaum and Mr. Peterson; neither is there any showing that Will Wilson ever had any knowledge of this authorization even though Wilson's name is the only name appearing on the authorization.

The Government contends that, despite the language of Section 2516, Mr. Lindenbaum had the authority to issue the authorization for the request for the extension of the wire tap by virtue of Section 510 of Title 28, United States Code. That statute provides:

> The Attorney General may from time to time make such provisions as he considers appropriate authorizing the performance by any other officer, employee, or agency of the Department of Justice of any function of the Attorney General.

The regulation promulgated under that statute, Section 0.6 of Title 28, Code of Federal Regulations, provides:

> The Executive Assistant to the Attorney General established in the Office of the Attorney General shall:

> (a) Assist the Attorney General in the review of opinions, interpretations, decisions of the Board of Immigration Appeals, applications for pardon and other forms of Executive clemency, antitrust complaints, contracts, agreements, and proposed offers in compromise and other matters submitted for the Attorney General's action.

> (b) Perform such other duties and functions as may be specially assigned from time to time by the Attorney General.

■ If the language of Section 2516 does not preclude delegation to anyone other than an Assistant Attorney General specially designated by the Attorney General, Section 510 and the corresponding regulation (which has the force of law) would permit delegation to Mr. Lindenbaum and the authorization here for the request for the extension would be completely proper. In the Court's opinion, however, when Congress stated in Section 2516 that the power to authorize applications to a Federal judge was given to "the Attorney General, or any Assistant Attorney General specially designated by the Attorney General," it excluded designation of or delegation to all other persons. It is a long recognized rule of statutory construction that where one statute contains a specific provision or direction, as does Section 2516, and another statute dealing with the same or similar subject matter contains a more general provision or direction, as that contained in Section 510 and the regulation enacted thereunder, the particular or specific provisions must control. "Specific terms prevail over the general in the same or another statute which otherwise might be controlling." Fourco Glass Co. v. Transmirra Products Corp., 353 U.S. 222, 228–229, 77 S.Ct. 787, 791, 1 L.Ed.2d 786 (1957), *quoting* Ginsberg & Sons v. Popkin, 285 U.S. 204, 208, 52 S.Ct. 322, 76 L.Ed. 704 (1932). A related rule of construction holds that the enumeration of certain things in a statute implies the exclusion of all others. As was stated by the Supreme Court in Continental Casualty Co.

v. United States, 314 U.S. 527, 533, 62 S.Ct. 393, 396, 86 L.Ed. 426 (1941): "[A] 'legislative affirmative description' implies denial of the non-described powers." Applying these rules to the statutes here under consideration, it can only be concluded that the specific language of Section 2516 must take precedence over the general provisions of Section 510 and that the express limitations in Section 2516 preclude any inclusion of persons not specifically mentioned.[2] *Only* the Attorney General or an Assistant Attorney General specially designated by the Attorney General may authorize an application to a Federal judge for an order approving a wire interception.

The government has cited the case of In re December 1968 Grand Jury v. United States, 420 F.2d 1201 (7th Cir. 1970), in support of its contention that the general delegation statute, Section 510 of Title 18, United States Code, gave validity to Mr. Lindenbaum's actions in this matter. The court held in that decision that Section 510 could be used by the Attorney General to delegate the authority vested in him under Section 2514 of Title 18, United States Code, to grant immunity from prosecution to witnesses before a grand jury whose testimony is deemed necessary for the public interest. Section 2514 merely provides that any United States Attorney "upon the approval of the Attorney General" may apply to a court for an order requiring a witness to testify in exchange for a conferral of complete transactional immunity. It is thus readily apparent that Sections 2514 and 2516 are clearly distinguishable in terms of the language used in each. It should be further noted that Congress was dealing

with two very different problems in these two statutes. As was stated most recently in United States v. Robinson, (5th Cir. Jan. 12, 1972):

> The decision to ask a court to compel testimony with a consequent grant of immunity does not involve an action even approaching the gravity which attaches to the decision to apply for permission to engage in secret electronic surveillance. Congress could justifiably feel it important that the public know that only an identifiable person subject to the political process could trigger the unknown, unseen, unheard intrusion into private affairs that are constitutionally protected against unreasonable searches, entitled to freedom from self-incriminatory results, and presumptively innocent. With equal propriety, Congress could choose to permit a broader number of properly designated persons to ask a court to require a witness to relate facts he knows and, as a price therefor, relieve him of prosecution for his involvement and past actions which are often already fully known to the law and many times the subject of public charges.

■ The legislative history relating to Section 2516 indicates that Congress was concerned with centralizing the source of decision-making involved in authorizing wire tap applications. The Senate Report stated:

> Paragraph (1) [of Section 2516] provides that the Attorney General, or any Assistant Attorney General of the Department of Justice specifically designated by him, may authorize an application for an order authorizing

---

2. A further rationale was supplied by the court in United States v. Robinson (5th Cir. Jan. 12, 1972). The court stated: The court stated:

> Since § 510 already existed when § 2516(1) was enacted, the inclusion in the latter statute of language specifying who the Attorney General could specially designate to perform the instigating function would have been sur-

plusage if Congress meant that the Attorney General could authorize the performance of that duty by any officer, employee or agency of his department. We therefore conclude that § 2516(1) was intended to operate as a limit upon § 510 rather than that § 510 broadened the circumscribed authority set out in § 2516(1).

the interception of wire or oral communications. This provision centralizes in a publicly responsible official subject to the political process the formulation of law enforcement policy on the use of electronic surveillance techniques. Centralization will avoid the possibility that divergent practices might develop. Should abuses occur, the lines of responsibility lead to an identifiable person. This provision in itself should go a long way in guaranteeing that no abuses will happen. Senate Report (Judiciary Committee) No. 1097, 2 U.S.Code Cong. & Admin. News, pp. 2112, 2185 (1968).

By expressing the intention that initiation of wire tap authorizations should be made by "a publicly responsible official subject to the political process," the Court is of the opinion that Congress wanted to insure that these decisions would be made by an individual appointed by the President and confirmed by the Senate. See United States v. Robinson, (5th Cir. Jan. 12, 1972). The Attorney General and the nine Assistant Attorneys General fall into this category; The Executive Assistant to the Attorney General and a Deputy Assistant Attorney General do not.[3] The Congressional desire to centralize the decision-making process in matters of this nature has also been defeated in the present case. On the basis of the information supplied to the Court as of this time, it is impossible to determine precisely who did authorize the application for the extension order. Mr. Lindenbaum admits that he designated Will Wilson to authorize the application, yet it is clear that Mr. Peterson, and not Will Wilson, actually signed the authorization. Neither Lindenbaum nor Peterson, however, have stated that they had personal knowledge of the circumstances surrounding the particular wire taps involved here or that they actually made the decision to seek the approval for an extension. In short, "the lines of responsibility" do not "lead to an identifiable person" in this case. An important safeguard, expressly built into the statute, has been effectively by-passed. Far more than mere noncompliance with a statutory "technicality" is here involved; a principal Congressional purpose has been thwarted and the Court cannot and will not condone such procedure.

United States v. Robinson, (5th Cir. Jan. 12, 1972), discussed briefly above, concerned the identical legal issue and virtually the same factual situation, involving the same individuals in the Department of Justice, presented here. In a well-reasoned opinion applying rules of statutory construction and taking into consideration the legislative history, the court reached the same conclusion as that expressed here.

For these reasons, it is ordered that the contents of the conversations of defendants intercepted under the authority of the Court's extension order issued April 2, 1971, and all evidence derived therefrom, be suppressed. This ruling shall apply only to those defendants who were parties to an improperly authorized wire interception or persons against whom such interceptions were directed.

Trial of this matter may be adjourned in order that the government may exercise its right to appeal this order if it so chooses. While the statute provides that the government has thirty days in which to file its appeal, the government is requested, in light of the close proximity of the trial date, to notify the Court as soon as possible as to whether or not it will appeal so that the trial may take place as scheduled if no appeal is taken.

---

3. It is true that the Deputy Attorney General, who is not included in the language of Section 2516, also must be appointed by the President and confirmed by the Senate. However, the Deputy Attorney General has statutory authority to act as Attorney General in that individual's absence or disability. See Section 508 of Title 28, United States Code. He is also by statute the first assistant to the Attorney General and thus could be called an Assistant Attorney General.

APPENDIX
Plaintiff's Exhibit "A"
AFFIDAVIT

District of Columbia:

Sol Lindenbaum, being duly sworn, deposes and says:

I am Executive Assistant to the Attorney General of the United States.

The Attorney General personally approved the request for authority to apply to a Federal judge for an interception order under Title 18, United States Code, Section 2516, et seq., in this case on March 17, 1971. Attached is a copy of his memorandum of March 17, 1971, to Will Wilson, the Assistant Attorney General in charge of the Criminal Division, specially designating Will Wilson to authorize David J. Cook to make the original application for an interception order. The Attorney General authorized me, pursuant to 28 U.S.C. § 510, to act on the extension of the interception of wire communications in this matter. Pursuant to the Attorney General's authorization, on April 2, 1971, I approved an action designating Will Wilson to authorize David J. Cook to make the application for extension. In accordance with the Attorney General's directions, I submitted information to him concerning my action as soon as practicable so that he could order the interception terminated if he did not approve of it. He did not direct termination of this interception.

(s) Sol Lindenbaum
SOL LINDENBAUM
Executive Assistant
to the Attorney
General of the
United States

Subscribed and sworn to before me this 19th day of October, 1971.
(s) Audrey Anne Crump

My Commission Expires August 31, 1976.

Plaintiff's Exhibit "B"
AFFIDAVIT

District of Columbia:

Henry E. Petersen, being duly sworn, deposes and says:

I am Acting Assistant Attorney General in charge of the Criminal Division, United States Department of Justice.

The Attorney General has directed that every request for authority to apply to a Federal judge for an interception order under Title 18, United States Code, Section 2516, et seq. be submitted to him as a condition precedent to application. Upon approval of the initial application by the Attorney General in this case, the notification to the applicant that he was authorized to present the application to the court was sent to him by the Criminal Division. I signed Will Wilson's name to the letters dated March 17, 1971, and April 2, 1971, notifying David J. Cook that he was authorized to make application to the court for an interception order and for an extension of the interception order, respectively, with respect to certain telephones in Warren, Michigan, used by Richard "Wheels" Campagna. At both of those times, I was a Deputy Assistant Attorney General in the Criminal Division and acted in accordance with the authorization of Will Wilson and the standard procedures of the Criminal Division. The signing of Will Wilson's name was in conformity with the standard procedure of dispatching such a letter in every case in which the Attorney General had authorized approval of an application for an interception order or extension and specially designated Will Wilson to authorize the applicant to make the application on an *ad hoc* basis.

(s) Henry E. Petersen
HENRY E. PETERSEN

Acting Assistant Attorney General Criminal Division

Subscribed and sworn to before me this 19th day of October, 1971.

(s) Audrey Anne Crump
My Commission Expires August 31, 1976.