**UNITED STATES of America**
v.
**Julius ASKINS et al.**
**UNITED STATES of America**
v.
**Herman W. NEUMYER et al.**
**Crim. Nos. 71–0556–B, 71–0557–B.**

United States District Court,
D. Maryland.
Oct. 27, 1972.

George Beall, U. S. Atty., and James E. Anderson and Jeffrey S. White, Asst. U. S. Attys., for United States.

Raymond M. Faby, Baltimore, Md., for defendant Neumyer.

Phillip M. Sutley, Baltimore, Md., for defendants K. Ward, S. Eckert, F. Eckert, Peat and Bollottiere.

Howard L. Cardin, Baltimore, Md., for defendants L. Shade, J. Shade and Kalski.

Stanley Cohen, Baltimore, Md., for defendants E. Maddox, B. Maddox and Robinson.

James B. Carson, Baltimore, Md., for defendants E. and M. Johnson.

Peter G. Angelos, Baltimore, Md., for defendant Pasquariello.

Philip D. Quint, Baltimore, Md., for defendant Marciante.

E. Thomas Maxwell, Jr., Baltimore, Md., for defendant Askins.

Philip Goodman, Baltimore, Md., for defendant Davis.

BLAIR, District Judge.

## MEMORANDUM OPINION AND ORDER ON PRETRIAL MOTIONS

Defendants were indicted under Sections 1955 and 2 of Title 18 of the United States Code, both for operating and for aiding and abetting the operation of a gambling business in violation of state law. See Annotated Code of Maryland, Art. 27, §§ 240, 356. Pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C.A. § 2510 et seq. [hereinafter cited as Title III], the government applied for and obtained authorization to intercept telephone communications of some of the defendants on certain designated telephones. Some of the defendants have moved to suppress the wiretap evidence and some oppose the giving of voice exemplars sought by the United States. Additionally, several of the defendants have moved to dismiss the indictments.

### I. Wiretap

A careful examination of all motions filed discloses the existence of five principal grounds which are relied upon to support the motions to suppress. These are: (1) that Title III is unconstitutional on its face or as applied; (2) that the government did not comply with the authorization procedures required by Title III; (3) that the government had not exhausted its other investigative procedures prior to its use of the wiretap; (4) that there was insufficient probable cause to justify the court in issuing an order authorizing the wiretap; and (5) that the government, in violation of Title III and the authorization order, failed to minimize the number of communications that were intercepted.

The defendants' first contention, that Title III is unconstitutional on its face or as applied, is neither new nor unique. Although the question has not been resolved by the Supreme Court, it has been considered on numerous occasions by the lower federal courts. So far as this court knows, with but one exception all federal courts ruling on the validity of Title III have concluded that it is constitutional. See United States v. Cox, 462 F.2d 1293 (8th Cir. 1972); United States v. Cox, 449 F.2d 679 (10th Cir. 1971), cert. denied, 406 U.S. 934, 92 S.Ct. 1783, 32 L.Ed.2d 136 (1972); United States v. Focarile, 340 F.Supp. 1033 (D.Md.1972); United States v. LaGorga, 336 F.Supp. 190 (W.D.Pa. 1971); United States v. King, 335 F. Supp. 523 (S.D.Cal.1971); United States v. Lawson, 334 F.Supp. 612 (E. D.Pa.1971); United States v. Becker, 334 F.Supp. 546 (S.D.N.Y.1971); United States v. Perillo, 333 F.Supp. 914 (D.Del.1971); United States v. Leta, 332 F.Supp. 1357 (M.D.Pa.1971); Donlon v. United States, 331 F.Supp. 979 (D.Del.1971); United States v. Scott, 331 F.Supp. 233 (D.D.C.1971); United States v. Cantor, 328 F.Supp. 561 (E.D. Pa.1971); United States v. Sklaroff, 323 F.Supp. 296 (S.D.Fla.1971); United States v. Escandor, 319 F.Supp. 295 (S. D.Fla.1970), rev'd. on other grounds sub nom. United States v. Robinson, 468 F. 2d 189 (5th Cir. 1972). Contra, United States v. Whitaker, 343 F.Supp. 358 (E. D.Pa.1972). Reiteration here of the principles enumerated in the above-cited cases would serve no useful purpose. It is sufficient to say that this court finds the reasoning of these cases persuasive and now adds its name to the growing list of tribunals which have held that Title III does not violate the Constitution of the United States. For the reasons set forth later in this opinion, it likewise holds that Title III is not unconstitutional as applied to defendants.

The defendants, in their second line of attack, assert that their motion to suppress should be granted because the government did not comply with the autho-

rization procedures contained within Title III. The applicable section of that Title, 18 U.S.C.A. § 2516, requires that either the Attorney General or a specially designated Assistant Attorney General authorize the requesting prosecuting attorney to apply to a court of competent jurisdiction for an order allowing the interception of telephonic communications.

The facts surrounding the instant authorization and application follow a pattern which has become familiar because of the number of cases in which similar procedures have been attacked. Accompanying the application to a judge of this court was a letter of January 12, 1971 to David E. Holt, Esquire, Special Attorney, Strike Force, Department of Justice. This letter which, purportedly, was over the signature of Will Wilson, Assistant Attorney General in Charge of the Criminal Division of the Department of Justice, recited that the wiretap application was authorized under powers specially delegated by the Attorney General of the United States.

Prior to the hearing on the defendants' motions, Sol Lindenbaum, Executive Assistant to the Attorney General of the United States, filed an affidavit indicating that Attorney General Mitchell had approved, in writing, the application for wiretap in each of these cases but that the originals of these memoranda of approval had been lost. Also filed was an affidavit from Henry E. Peterson, who was then a Deputy Assistant Attorney General in the Criminal Division, which stated that he had affixed Will Wilson's signature to the letters authorizing application to the court. This affidavit further asserted that Peterson believed that the signing of Will Wilson's name was merely a ministerial act which he had been expressly authorized to perform.

Apparently, the lost records were recovered after the hearing on the defendants' motions had been completed. On July 19, 1972, John Mitchell, formerly Attorney General of the United States, filed an affidavit in which he asserted that he had, in fact, personally authorized the wiretap application in question and attached to this affidavit were photocopies of the memoranda to Will Wilson dated January 12, 1971 and February 17, 1971 concerning wiretap authorizations presently under consideration. Copies of this affidavit and memoranda are appended to this opinion.

 The issue confronting the court then is whether the procedures used in authorizing and applying for the wiretaps were defective so as to require that the evidence obtained through this means be suppressed. A number of courts have considered this question on virtually identical facts and have concluded that the authorization and application were legally sufficient. The rationale for these decisions is that the action by the Attorney General constituted an authorization in compliance with the mandates of Section 2516 and that once such authorization has been granted by the Attorney General the actions of his subordinates are but ministerial in nature and cannot alter the fact of authorization. Under this reasoning, the letter purportedly over the signature of the Assistant Attorney General is but an act of transmittal without legal consequence to the authorization itself. *See,* United States v. Ceraso, 467 F.2d 647 (3d Cir. 1972); United States v. Cox, 462 F.2d 1293 (8th Cir. 1972); United States v. Pisacano, 459 F.2d 259 (2d Cir. 1972); United States v. Whitaker, 343 F.Supp. 358 (E.D.Pa.1972); United States v. Iannelli, 339 F.Supp. 171 (W.D.Pa. 1972); United States v. Doolittle, 341 F.Supp. 163 (M.D.Ga.1972); United States v. Aquino, 338 F.Supp. 1080 (E. D.Mich.1972); United States v. La-Gorga, 336 F.Supp. 190 (W.D.Pa.1971). This court concurs with the reasoning contained in the above-cited opinions and holds that the wiretap applications were lawfully authorized by former Attorney General Mitchell. Therefore, the wiretap evidence which was seized pursuant thereto need not be suppressed.

Before proceeding to the next question, a brief mention of United States v. Focarile, 340 F.Supp. 1033 (D.Md.1972), is in order. In that case, Judge Miller of this Court was confronted with a different fact situation in which Sol Lindenbaum had affixed Mitchell's initials to a memorandum which designated Will Wilson to authorize a wiretap application. The affidavits submitted in support of the application showed that this memorandum was treated in the same manner as were those actually bearing Mitchell's initials. That is, the perfunctory letter of authorization was drafted and signed by one of Wilson's deputies without its ever being reviewed by Wilson. The opinion rendered in that case did not treat this fact as the pivotal point of the decision but instead suppressed the evidence because the wiretap application misled the court into believing that it was authorized by Will Wilson himself. To the extent that *Focarile* and the instant case are viewed for their factual settings they are distinguishable and hence reconcilable. This court feels that *Focarile* should be confined to its facts so that it will stand for the proposition that when neither the Attorney General nor an Assistant Attorney General personally authorizes a wiretap application, compliance with Title III is lacking and the suppression of all resulting evidence is thereby necessitated. If construed in this manner, *Focarile* is in accord with most of the other cases which have been confronted with similar facts. *See*, United States v. Robinson, 468 F.2d 189, 5th Cir., 1972; United States v. Cihal, 336 F.Supp. 261 (W.D. Pa., 1972); United States v. Aquino, 338 F.Supp. 1080 (E.D.Mich.1972); United States v. Mantello, Crim. No. 335–71, D.D.C., Mar. 29, 1972. *But see* United States v. Pisacano, 459 F.2d 259 (2d Cir. 1972).

The third ground relied upon by the defendants to support their motions for suppression is that the government's affidavits did not comply with the judicial and statutory prerequisites for a wiretap authorization. That is, the affidavits did not disclose the existence of sufficient probable cause nor did they satisfy the statutory requirement that other investigative procedures be tried and fail or reasonably appear to be unlikely to succeed or are too dangerous before application for a court-ordered wiretap is made.

As a threshold question, this court must decide whether its attention must be confined to the contents of the affidavit itself or whether the defendants may introduce additional evidence to support their claims. The general rule is that the federal courts will permit a defendant to introduce evidence to attack the veracity of an affidavit which is the basis for a search warrant. United States ex rel. Pugh v. Pate, 401 F.2d 6 (7th Cir. 1968); United States v. Roth, 391 F.2d 507 (7th Cir. 1967); King v. United States, 282 F.2d 398 (4th Cir. 1960) and cases cited at 400 n. 4. However, before the court will order an evidentiary hearing, the defendant must affirmatively demonstrate that the warrant was based upon false statements or other improper conduct on the part of the government. *See* United States v. Dunnings, 425 F.2d 836 (2d Cir. 1969), cert. denied, 397 U.S. 1002, 90 S.Ct. 1149, 25 L.Ed.2d 412 (1970); United States v. Halsey, 257 F.Supp. 1002 (S. D.N.Y.1966). The defendants in this case have adduced no evidence to indicate that the statements of FBI Agent Faulkner were in any way false nor have they shown that any impropriety occurred during the processing of the applications and the entry of the orders by Judge Harvey. The mere suggestion, contained within the defendants' motions, that there was inadequate probable cause or that the statutory exhaustion requirements were not met is not sufficient to entitle the defendants to a hearing on the veracity of the affiant's statements. Thus the court, in resolving the defendants' challenges, will confine its attention to the contents of the affidavits submitted in support of the government's application for wiretap authorization.

A · valid wiretap authorization, like any other search warrant, depends upon an adequate showing of probable cause. United States v. Kleve, 337 F. Supp. 557 (D.Minn.1971). In Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the Supreme Court held that probable cause requires that an affidavit based upon a report of an unidentified informant must disclose the basis for the affiant's belief that the informant is reliable as well as the circumstances under which the informant acquired his information. In the instant case, the court has no doubt that the government has satisfied this two-pronged test.

Agent Faulkner's affidavit refers to three unidentified informants. Informant Number 1 had been supplying accurate information for the preceding two months and his information to state authorities over the past five years had resulted in ten arrests. The affidavit further recited that the information supplied by this informant was obtained through numerous discussions and familiarity with lotteries and lottery operations in this area. Likewise, Informant Number 2 had provided reliable information to state authorities over the past year resulting in six arrests and that his information was acquired through membership in the Maryland · gambling community. The same information was furnished with respect to Informant Number 3. That is, over the past year he had provided state authorities with information which resulted in the arrest of a number of individuals. Thus, it is apparent that each informant's report independently satisfies the criteria in *Aguilar*. However; as additional evidence of reliability, the separate reports all tend to corroborate each other and, furthermore, independent FBI investigations, conducted before the application for wiretap authorization was submitted, confirm and corroborate many of the averments contained in each informants' report. *See* Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

The court, having found that there has been an adequate showing of probable cause which satisfies the Fourth Amendment prohibition on unreasonable searches and seizures, will now direct its attention to the remaining question of whether the exhaustion requirement of Title III has been satisfied.

The statutory scheme of Title III does not require a showing that the government has attempted to employ other investigative techniques prior to applying for wiretap authorization. It is sufficient to show either that other procedures reasonably appear unlikely to succeed or that they are too dangerous to use. 18 U.S.C.A. § 2518(1)(c), (3)(c). Also, it must be recognized that the government's burden of establishing its compliance with these subsections is not great. United States v. Whitaker, 343 F.Supp. 358 (E.D.Pa.1972).

The affidavit submitted by the FBI Agent, Faulkner, stated that his investigative experience as well as that of other agents indicates that the majority of investigative procedures would be ineffective in this case for two reasons. The first was that all informants who were then known to the FBI have "refused to testify in open court for fear of their personal safety and that of their families." The second reason was that past experience has indicated that gamblers do not keep the type of business records which, if seized pursuant to a search warrant, would be sufficient to establish every element of the offense charged. This information appears to be quite sufficient to show compliance with the exhaustion requirement of Title III and thus the government has satisfied its burden of proof so that suppression of evidence on this ground is not warranted.

Although many of the defendants, in their motions to suppress, have raised the issue of minimization, at the hearing it appeared that the counsel present did not strenuously assert this contention. However, in view of the number of defendants that might be affected by reso-

lution of this question, the court will consider whether the government conducted the wiretap procedures so as to minimize the interception of innocent communications.

Pursuant to Judge Harvey's order authorizing the interception of telephone calls, the government periodically submitted written reports detailing the progress of the investigations. The contents of the first two reports recited that the electronic surveillance was conducted from January 16, 1971 to January 24, 1971 and that approximately 513 telephone calls were intercepted. Of this number, only 13 were personal in nature and after their subject matter became apparent, the monitoring equipment was disconnected. An additional two reports, covering the period from February 18, 1971 through February 27, 1971, stated that 276 calls had been intercepted and that seven were personal in nature but, with respect to those calls, the monitoring ceased when their subject matter was discovered.

Since the contents of these reports were not challenged by any of the defendants, this court must assume that they correctly and truthfully relate the details of the electronic surveillance.

 It is beyond dispute that the nature of a telephone communication cannot be ascertained prior to its being monitored. Regardless of the care used in implementing a wiretap, some personal communications will be intercepted. Thus, it is clear that the minimization requirement of Title III does not mandate that only calls of a criminal nature be overheard. This section, 18 U.S.C.A. § 2518(5), is certainly satisfied if the monitoring ceases as soon as the listener learns that the subject matter of communication is personal. Furthermore, the monitoring of conversations of a non-criminal nature does not of necessity require suppression of evidence arising from conversations of a criminal nature. *See* United States v. Cox, 462 F. 2d 1293 (8th Cir. 1972); United States v. Focarile, 340 F.Supp. 1033 (D.Md. 1972); United States v. LaGorga, 336

F.Supp. 190 (W.D.Pa.1971). This being the case, the court holds that the government has satisfactorily minimized the number of communications intercepted and it has, therefore, complied with Title III. Should it develop in the course of trial that evidence is offered of intercepted conversation which is neither relevant nor material to charges, in these cases, the court may take appropriate action at that time.

An additional ground for suppression which has been asserted by several defendants is that Judge Harvey's authorization order otherwise fails to comply with the requirements of Title III. After carefully comparing the contents of that order with the provisions of 18 U.S.C.A. § 2518(4), this court concludes that the defendants' contentions are entirely without merit and they are, hereby, rejected.

This court, having concluded that Title III is constitutional facially and as applied to these defendants; that both the Attorney General's authorization and Judge Harvey's order fulfilled the statutory requirements; that probable cause for the order existed; and that the agents had both exhausted other procedures and minimized the communications intercepted, hereby denies each of the defendants' motions to suppress the evidence obtained as a result of the wiretaps in question.

Since the court has concluded that the wiretap evidence need not be suppressed, it must, consequently, deny the defendant Neumyer's motion to dismiss the indictment against him. Although not entirely clear, it appears that the foundation for this motion was the erroneous assumption that the court would suppress the evidence. If this in fact occurred, it is arguable that the admissible evidence would not be sufficient to sustain the indictment. However, because the wiretap evidence is admissible, the indictment is not invalid and it will, therefore, not be dismissed.

 The defendant Askins has asserted two additional grounds in support of his motion to suppress. First, he al-

leges that the electronic surveillance was commenced prior to its being authorized by the court; and second, that the government failed to serve an inventory as required by 18 U.S.C.A. § 2518(8)(d) within ninety days after the application for wiretap authorization was filed. Since these allegations were raised in a motion to suppress, the burden of proving their truth rests on the movant. *See* Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939); Grainger v. United States, 158 F.2d 236 (4 Cir. 1946); United States v. Frankfeld, 100 F.Supp. 934 (D.Md.1951). Neither affidavits nor evidence in support of this motion has been presented to this court. Therefore, the defendants have not satisfied their burden of proof and the court must, at this time, deny the motion to suppress.

■ The defendants Shade and Kalski, in their motion to dismiss, have asserted that the eight-month delay between their arrest and indictment has violated their Sixth Amendment right to a speedy trial. While it is true that the right to a speedy trial attaches after an arrest, United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), the mere allegation that eight months elapsed between arrest and indictment does not establish a *prima facie* constitutional violation. *Cf.* United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L. Ed.2d 627 (1966); Pollard v. United States, 352 U.S. 354, 77 S.Ct. 481, 1 L. Ed.2d 393 (1957).

■ The law in this area seems clear. It is incumbent upon the defendant to prove that he suffered actual prejudice or that the dilatory conduct of the government was either intentionally oppressive or totally unrelated to the case in question before the burden shifts so that the prosecution must justify the delay. United States v. Lee, 413 F.2d 910 (7th Cir. 1969); United States v. Jackson, 369 F.2d 936 (4th Cir. 1966); United States v. Hanna, 347 F.Supp. 1010 (1972). *Cf.* Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1969). *See also*, United States v.

Banks, 370 F.2d 141 (4th Cir. 1966). In the instant case, the defendant has proven neither. All that has been submitted to this court is the unsupported allegation that prejudice has been suffered. This, by itself, does not satisfy the defendants' initial burden. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1971). The motion to dismiss the indictment is, therefore, denied.

## II. Voice Exemplars

The government, to establish the identity of those people whose voices were recorded as part of the wiretap procedure, seeks to compel all but three of the defendants to submit a sample of their voices for spectrographic analysis. This procedure is quite simple. The subject speaks several words into an electronic device which graphically records the characteristics of that voice. Because the qualities of the spoken word are influenced by many physical traits such as the shape of the nose, mouth and throat as well as the manner of moving the lips, tongue and teeth, it is unlikely that any two people will have identical voices. Thus, by comparing the known voice prints of the defendants with those made from the wiretap recordings, the government hopes to establish the identity of the unknown speakers.

Initially, it should be noted that although scientific research indicates that voice print analysis is an effective identification technique, *see,* United States v. Raymond, 337 F.Supp. 641 (D.D.C. 1972), the issue of whether the results obtained will be admitted into evidence is not before the court and it will not be considered until such time as it is properly presented for resolution. The defendants have objected to voice sampling procedure asserting that it violates both the Fifth Amendment prohibition on self incrimination and the Fourth Amendment right to be free of unreasonable searches and seizures.

■ The memoranda submitted in support of these contentions recognize that the Fifth Amendment protects only those communications and physiological reactions which are testimonial in na-

ture. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 903 (1966). The defendants, however, attempt to bring their case within this protected area by contending that the act of speaking into a machine somehow differs from the act of speaking to witnesses which was held valid in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). This court is unable to perceive the difference, nor can it distinguish the voice exemplar from the handwriting sample approved in Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). Thus, the defendants' Fifth Amendment challenge must be rejected.

The defendants' second contention is that forcing them to furnish the government with a voice sample would violate the Fourth Amendment prohibition on unreasonable searches and seizures. The language of that amendment is clear: only unreasonable searches and seizures fall outside the bounds of constitutionality.

When the defendant's person is the source of the desired evidence, the test of reasonableness is twofold. First, the procedure which must be used to obtain the evidence must neither shock the conscience nor offend society's traditional sense of justice. Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952); and second, the search may be made only upon a showing of probable cause. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Clearly, requiring a person to speak, an activity engaged in by the vast majority of people every day of their lives, cannot, in any sense, be considered the type conduct which offends "those canons of decency and fairness which express the notions of justice of English-speaking peoples. . . ." Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). Furthermore, it is equally clear that compelling a person to furnish investigating authorities with a voice exemplar does not constitute a procedure which could be classified as

"wholesale intrusions upon the personal security of our citizenry." Davis v. Mississippi, 394 U.S. 721, 726, 89 S.Ct. 1394, 1397, 22 L.Ed.2d 676 (1969). Thus the only question which is before this court is whether there is probable cause to order the defendants to submit their voices to spectrographic analysis.

The government appears to be asserting that the existence of an indictment against the defendants for engaging in illegal gambling activity when considered in conjunction with the affidavit submitted by Special Agent Faulkner establishes probable cause for this court to authorize the taking of a voice exemplar. The defendants, on the other hand, urge this court to adopt as *per se* the rule that an independent showing of probable cause is required regardless of the fact that the persons to be "searched" have been formally charged with the commission of a crime.

Probable cause, as that term is used in the Fourth Amendment, requires only that an arrest or seizure be made under circumstances which are " 'sufficient in themselves to warrant a man of reasonable caution in the belief' that an offense has been or is being committed." Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). Thus, an arrest warrant can be based upon an indictment because the Grand Jury has determined that there is reason to believe that the person charged has violated the law. Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed. 1503 (1958). However, an indictment does not, of necessity, certify that there is reason to believe that the person charged has evidence of the crime in his possession. It is for this reason that an indictment does not automatically justify the issuance of a search warrant. *See* United States v. Bailey, 327 F.Supp. 802 (N.D.Ill.1971). But, if a court concludes that the suspicious circumstances found by the Grand Jury are identical to the suspicious circumstances required for a search warrant, there would seem to be no need to

require the prosecution to make an independent showing of probable cause.

 These principles make it evident that the task confronting this court is to independently ascertain what circumstances led the Grand Jury to conclude that the defendants had committed a crime. It is clear that the bulk of the evidence presented to the Grand Jury was the result of the electronic surveillance. This fact, however, does not necessitate the conclusion that if the Grand Jury determined that there was probable cause to believe that the defendants engaged in the illegal activity charged, it must have first determined that the recorded voices belong to all of the defendants. It is quite possible that the Grand Jury indicted some people because reference to them was made by another whose voice was recorded. To this extent, the mere existence of the indictment does not establish probable cause to require the defendants to furnish a voice exemplar. The comprehensive affidavit of Special Agent Faulkner, however, supplies the probable cause for a search which the indictment lacks. The court has carefully examined this affidavit, and finds as a fact that information contained therein establishes probable cause to believe the defendants' voices are contained in the government recordings. Thus, the court concludes that no sufficient cause has been shown by any defendants why the government's motion to take voice exemplars should not be granted.

## APPENDIX

### AFFIDAVIT

District of Columbia:

John N. Mitchell, being duly sworn, deposes and says:

I held the office of Attorney General of the United States from January 21, 1969, through March 1, 1972.

On January 12, 1971, and February 17, 1971, I approved requests for authority to apply for interception orders in these cases and personally initialed memoranda of those dates reflecting my favorable action on the requests. I have examined the originals of these memoranda and certify that they both bear my initials which were personally affixed by me on January 12, and February 17, 1971, respectively. Attached are copies of my personally initialed memoranda of those dates reflecting my favorable action on the requests.

My memoranda of approval in these cases constituted notification to the Assistant Attorney General of the Criminal Division that the discretionary action of approving each of the requests to make application to the court for an interception order had been taken by me.

(s) John N. Mitchell
John N. Mitchell

UNITED STATES GOVERNMENT DEPARTMENT OF JUSTICE

*Memorandum*

TO : Will Wilson DATE: Jan. 12, 1971
 Assistant Attorney General JNM:DEH:skh
 Criminal Division

FROM : John N. Mitchell
 Attorney General

SUBJECT : Interception Order Authorization

This is with regard to your recommendation that authorization be given to David E. Holt of the Criminal Division to make application for an Order of the Court under Title 18, United States Code, Section 2518, permitting the interception of wire communications for a fifteen (15) day period to and from telephones listed in the name of Linda L. Rooks, 610 West Timonium Road, Baltimore, Maryland, and carrying telephone numbers 301-252-8710 and 301-252-8711, in connection with

the investigation into possible violations of Title 18, United States Code, Sections 1955 and 371 by Arnold Silbert, Linda L. Rooks, Julius Askins and others as yet unknown.

Pursuant to the powers conferred on me by Section 2516 of Title 18, United States Code, you are hereby specially designated to exercise those powers for the purpose of authorizing David E. Holt to make the above-described application.

UNITED STATES GOVERNMENT DEPARTMENT OF JUSTICE

*Memorandum*

| | | | |
|---|---|---|---|
| TO | : Will Wilson | DATE: | Feb. 17, 1971 |
| | Assistant Attorney General | | |
| | Criminal Division | JNM:DEH:skh | |
| FROM | : John N. Mitchell | | |
| | Attorney General | | |

SUBJECT : Interception Order Authorization

This is with regard to your recommendation that authorization be given to David E. Holt of the Criminal Division to make application for an Order of the Court under Title 18, United States Code, Section 2518, permitting the interception of wire communications for a fifteen (15) day period to and from telephone number 301-433-4362, located at 1190 West Northern Parkway, Apartment 719, Baltimore, Maryland, in connection with the investigation into possible violations of Title 18, United States Code, Sections 1955 and 371, by Herman W. Neumyer, Arnold Silbert, Linda L. Rooks, Julius Askins, an individual known only as "Dan" and others as yet unknown.

Pursuant to the powers conferred on me by Section 2516 of Title 18, United States Code, you are hereby specially designated to exercise those powers for the purpose of authorizing David E. Holt to make the above-described application.