**UNITED STATES of America**

v.

**Robert S. CURRERI et al.**

**UNITED STATES of America**

v.

**Patricia Ann BLEAU et al.**

**Crim. Nos. 72–0433, 72–0434.**

United States District Court,
D. Maryland,
Baltimore Division.

July 11, 1973.

See also D.C., 363 F.Supp. 438.

George Beall, U. S. Atty., D. Md., David E. Holt, Jr., Sp. Atty., U. S. Dept. of Justice, Baltimore Strike Force, Baltimore, Md., for plaintiff.

H. Russell Smouse and George Psoras, Baltimore, Md., for defendants Robert Curreri, Charles Maney & Georgeina Gomez.

Russell J. White, Towson, Md., for defendants Frank Kagler & Patricia Bleau..

Joseph F. Lentz, Jr., Baltimore, Md., for defendants John Chalk, Willie Reaves, Freddie Ferguson, Donald Quickley, Elma Quickley, Edgar Hall, John Ayres, Doris Clark, Marie Person & James Henson.

Robert E. Cahill, Arnold M. Weiner, and M. Albert Figinski, Baltimore, Md., for defendants Melvin Brzostek & Calman Bernstein.

Stanley S. Cohen, Baltimore, Md., for defendant Wallace Jagodzinski.

Joseph Rosenthal, Baltimore, Md., for defendants Robert Burns & Nancy Bryant.

## MEMORANDUM AND ORDER

BLAIR, District Judge.

Defendants in the above-captioned cases, which have been informally combined for purposes of this motion, have moved to suppress evidence secured by the government through wiretaps obtained under the provisions of Title III

of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 et seq. · Based upon 18 U.S.C. § 1955, the indictments against defendants charge the conducting of a gambling operation in violation of state law, *see* Annotated Code of Maryland, Article 27, §§ 240 and 356, and are the result of a series of fruitful wiretap surveillances conducted by the Federal Bureau of Investigation between March and June of 1972. The initial wiretap order signed by Judge Watkins, the judge to whom the wiretap applications were submitted, was dated March 30, 1972 and authorized the interception of certain specifically defined telephone communications between Robert Curreri, an individual known as Bernice and others yet unknown on telephone numbers (301) 821–1740, (301) 821–1741, (301) 821–9795 and (301) 296–5870 for a period not to exceed 15 days or the attainment of the wiretaps' objective. A further order was signed by Judge Watkins on April 14, 1972 which authorized an additional 15 days surveillance of the conversations of Robert S. Curreri, Gina Gomez, John Thomas Chalk, Frank Kagler, Willie Reaves, Jr., and others yet unknown on telephone lines (301) 821–1740, (301) 821–1741 and (301) 821–9795. A third order, signed on May 1, 1972, granted 15 more days surveillance of the conversations of Robert S. Curreri, an individual known as Pat, Frank H. Kagler, and others yet unknown over telephone numbers (301) 296–1588 and (301) 488–6519. A final order dated May 17, 1972 authorized another 15 days surveillance of the conversations of Robert S. Curreri, an individual known as Pat, Frank H. Kagler, and others yet unknown over telephone number (301) 296–1588.

Defendants seek the suppression of all evidence obtained through these wiretaps, alleging as grounds that 1) Title III contravenes the Fourth Amendment; 2) the length of the wiretaps constituted a series of intrusions based upon a single showing of probable cause, in contravention of the Fourth Amendment's proscription against general searches; 3) the wiretap application was not properly authorized by the Attorney General or an Assistant Attorney General, specially designated, as required by 18 U.S.C. § 2516; 4) the wiretap application failed to list the name of the person authorizing it, as dictated by 18 U.S.C. § 2518(1)(a); 5) the applications and affidavits filed in support thereof failed to establish the probable cause required by 18 U.S.C. § 2518(3)(a), (b) and (d); 6) the orders did not give a full and complete statement of whether other investigative procedures were available, 18 U.S.C. § 2518(3)(c); 7) notice of the wiretaps was not served upon the defendants in accordance with 18 U.S.C. § 2518(8)(d); and finally 8) the government failed to minimize the interceptions, as required by 18 U.S.C. § 2518(5) and Judge Watkins' orders. These contentions will be discussed in' sequence.

■ The Fourth Circuit, in its very recent decision in United States v. Bobo, 477 F.2d 974 et seq. (4th Cir. 1973), foreclosed defendants' challenge to the constitutionality of Title III in this court by ruling that Title III did not offend the Fourth Amendment. This court, in compliance with the Fourth Circuit authority, holds, as it previously did in United States v. Askins, 351 F. Supp. 408 (D.Md.1972), that Title III is constitutional and is not in conflict with the Fourth Amendment.

■ In this same respect, the court also rules that the four wiretaps did not constitute a general search in violation of the Fourth Amendment. Title III specifically limits, on a showing of probable cause, the length of an interception to a period of not more than 30 days, although a court may permit extensions of not more than 30 days upon a new application and findings of probable cause for the extension. 18 U.S.C. § 2518(5). The Fourth Circuit in *Bobo, supra,* held that this time period was not impermissible, as to either the initial 30-day period or any extensions thereof. *Compare* Berger v. New York, 388 U.S. 41, 87 S.

**434**

Ct. 1873, 18 L.Ed.2d 1040 (1967). In the present case, none of the four interceptions exceeded 15 days and each was based upon an application filed pursuant to 18 U.S.C. § 2518(1) and specific findings by the court of the probable cause required by 18 U.S.C. § 2518(3). They are, therefore, in accordance with the requirements of Title III and the Fourth Amendment.

Defendants contend the wiretap applications were not authorized in accordance with 18 U.S.C. § 2516, which limits the power to authorize an application for a wiretap to the Attorney General or an Assistant Attorney General specially designated by the Attorney General. This contention is based on two premises: 1) an Acting Attorney General cannot authorize a Title III wiretap and 2) the signatures and initials of Richard G. Kleindienst are not genuine and he did not, as Acting Attorney General, in fact authorize the interceptions.

█ Defendants argue that an Acting Attorney General cannot authorize Title III wiretaps because Congress intended only those people appointed by the President and confirmed by the Senate to have this power and that an acting attorney has not been confirmed by the Senate and thereby made subject to the political process. They argue that Richard Kleindienst had not been confirmed by the Senate as Attorney General and hence had no authority to approve the wiretaps. This argument, however, ignores statutory reality and confuses an Acting Attorney General with an Attorney General nominate. Prior to being nominated, Richard Kleindienst was Deputy Attorney General, a position to which he was appointed by the President and confirmed by the Senate. 28 U.S.C. § 504. By specific statutory authorization, when a vacancy occurs in the Office of Attorney General, the Deputy Attorney General may exercise all the duties of the Attorney General. 28 U.S.C. § 508. While Richard Kleindienst, as a nominee for Attorney General, may not have yet been Attorney General due to a delay in Senate confirmation, he was the Deputy Attorney General and had the full powers of the Attorney General after the resignation of John Mitchell. He retained these powers as Deputy Attorney General until he officially became the Attorney General and assumed the powers formerly vested temporarily in the Office of Deputy Attorney General. Richard Kleindienst, as Deputy Attorney General in the position of Acting Attorney General, unquestionably had the power to authorize the electronic eavesdropping used in the present case.

█ Defendants next contend Richard Kleindienst did not sign or initial the memorandum authorizing wiretap applications despite the handwritten initials and signatures on the memoranda of authorization on file with the wiretap applications. Normally, there would be a presumption of regularity attaching to these documents, but recent cases have shown instances when staff personnel of the Department of Justice have signed their superior's names in Title III wiretap applications without their superior's knowing such had been done. *See, e. g.,* United States v. Robinson, 468 F.2d 189, rehearing en banc, 472 F.2d 973 (5th Cir. 1973); United States v. Giordano, 469 F.2d 522 (4th Cir. 1972); United States v. Aquino, 338 F.Supp. 1080 (E. D.Mich.1972). These staff signings of applications never actually approved by the Attorney General or an Assistant Attorney General specially designated are impermissible. United States v. Giordano, 469 F.2d 522 (4th Cir. 1972); United States v. Askins, 351 F.Supp. 408 (D.Md.1972). Defendants have requested affidavits from the government that the signatures and initials are genuine and that Richard Kleindienst did in fact authorize what he is represented to have authorized. Were it not for past cases where signatures were not genuine and authorizations not actually obtained, this court would not find that defendants had overcome the presumption of regularity. But, history has demonstrated the presumption of regularity should not here apply. Accordingly, the court directs the government to file appropriate

affidavits within 30 days from the date of this order demonstrating that Richard Kleindienst personally approved the wiretap applications and that the signatures and initials are either his or were affixed by a subordinate at his specific and knowing direction. *See* United States v. Bobo, *supra.*

■ Another point argued by defendants is that the application does not correctly specify who authorized it, as required by 18 U.S.C. § 2518(1)(a). The Title III applications in this case specifically state they were authorized by Richard Kleindienst, Acting Attorney General. The court, pending receipt of the before discussed affidavits, has no reason to believe someone other than Richard Kleindienst authorized the applications.

Defendants also claim the applications and affidavits fail to establish the probable cause required to be shown by 18 U.S.C. § 2518(3)(a)(b) and (d). Without extensive discussion, if only because defendants have presented only a bare allegation, the court has read the detailed applications and affidavits in each of the wiretap proceedings and finds that they do indeed establish the requisite probable cause, as Judge Watkins determined in issuing his orders.

■ Defendants assert that Judge Watkins' orders do not contain a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous to try, which statement defendants argue is required to be in the order by 18 U.S.C. § 2518(3)(c). Section 2518(3)(c) requires the authorizing judge to make a finding as to the unavailability of other investigative techniques; it does not in any way require that the order contain a "full and complete statement" concerning the availability of other investigative techniques. This section is to be contrasted with § 2518(1)(c) which requires such a full and complete state-

ment to be made in the application for the wiretap. Judge Watkins' orders each contain the specific finding that "normal investigative procedures reasonably appear to be unlikely to succeed." As was before noted, the applications and affidavits demonstrate ample probable cause for him to have made this finding. Having found other investigative techniques not likely to succeed, Judge Watkins was not required by 18 U.S.C. § 2518(3)(c) to place in his authorizing order any statement beyond that specific finding. *See,* United States v. Bobo, *supra.*

■ Defendants further claim the government failed to meet the notice requirements of 18 U.S.C. § 2518(8)(d) by not serving inventories or by not serving them until July 26, 1972, which defendants urge was not within the 90-day period specified by the statute. On July 26, 1972, Judge Watkins caused to be served upon Robert S. Curreri, Georgeina Gomez, Charles Maney, Frank Kagler, John T. Chalk, Willie Reaves, Jr., Bernice Jenkins, and Patricia A. Bleau inventories of the respective wiretaps in which they were named in the authorizing order notifying them of the fact of the entry of the order, the date of entry, the period authorized and the fact that communications were or were not intercepted. Only defendants named in the order for each particular 15-day interception were served with an inventory of that specific proceeding. No other defendants were served with inventories. Despite defendants' contention, a reading of the statute shows § 2518(8)(d) was complied with. As this section reads, the issuing judge, in his discretion, need only serve inventories on those persons named in the order; he is not required to serve inventories on all persons whose calls were intercepted. Defendants have shown nothing to indicate Judge Watkins abused his discretion by serving only the defendants named in the orders. Similarly, the fact that inventories were not served until

July 26 does not make them without the 90-day period. Section 2518(8)(d) clearly states orders shall be served within 90 days of "the termination of the period of an order or extensions thereof." The last 15-day order was entered May 17, 1972. July 26, 1972 was, to a mathematical certainty, within 90 days from the termination date of this last order. Moreover, even if the orders are not considered as extensions of one single interception, but as a series of orders against differing individuals on differing telephone lines, it is clear that Judge Watkins had the power, on an *ex parte* showing of good cause, to postpone service of the inventory. 18 U.S.C. § 2518(8)(d). It would be ridiculous to notify certain defendants of a wiretap when successive wiretaps were continuing in the investigation they were a part of. Thus, the court can readily perceive good cause would exist to delay the filing of an inventory until all the wiretaps were finally terminated, so that all inventories could be served at the same time. And even if the 90-day period were not met exactly, the remedy would not necessarily be suppression. The notice requirements of Title III are designed to prevent the secret search. When notice is in fact, albeit tardily, given of a previously clandestine search, Title III's intent has been satisfied and absent a showing of unreasonable or prejudicial delay, suppression is not required. United States v. LaGorga, 336 F.Supp. 190 (W.D.Pa.1971). *See also*, United States v. Cafero, 473 F.2d 489 (3d Cir. 1973). *Cf.* United States v. Eastman, 465 F.2d 1057 (3d Cir. 1972) (deliberate failure to file inventory requires suppression).

■■■ The final issue raised by defendants is that the agents failed to minimize the interception of non-authorized calls, as was required by Judge Watkins' order. *See*, 18 U.S.C. § 2518(5). The court is grateful to counsel for the arduous task they undertook in listening to the tapes of the monitored calls and in sorting out and synthesizing these calls into categories. A statistical stipulation was then worked out with the United States Attorney. Their cooperation in this respect has greatly assisted the court in passing upon the issue of minimization. As stipulated, the intercepted calls, by telephone number, can be categorized as follows:

1) (301) 821–1740

| | |
|---|---:|
| a) Total calls intercepted | 1,173 |
| b) Calls involving alleged gambling and properly intercepted in their entirety | 118 |
| c) Calls properly minimized | 772 |
| d) Calls defendants contend were not properly minimized | 283 |

2) (301) 821–1741

| | |
|---|---:|
| a) Total calls intercepted | 408 |
| b) Calls involving alleged gambling and properly intercepted in their entirety | 67 |
| c) Calls properly minimized | 246 |
| d) Calls defendants contend were not properly minimized | 95 |

3) (301) 821–9795

| | |
|---|---:|
| a) Total calls intercepted | 34 |
| b) Calls involving alleged gambling and properly intercepted in their entirety | 27 |
| c) Calls defendants contend were not properly minimized | 7 |

4) (301) 296–1588

| | |
|---|---:|
| a) Total calls intercepted | 480 |
| b) Calls involving alleged gambling and properly intercepted in their entirety | 440 |
| c) Calls properly minimized | 12 |
| d) Calls defendants contend were not properly minimized | 28 |

5) (301) 488–6519

| | |
|---|---:|
| a) Total calls intercepted | 266 |
| b) Calls involving alleged gambling and properly intercepted in their entirety | 247 |
| c) Calls properly minimized | 13 |
| d) Calls defendants contend were not properly minimized | 6 |

6) All calls intercepted on all lines

| | |
|---|---:|
| a) Total calls intercepted | 2,361 |
| b) Calls involving alleged gambling and properly intercepted in their entirety | 899 |
| c) Calls properly minimized | 1,043 |
| d) Calls defendants contend were not properly minimized | 419 |

The United States Attorney represented to the court at the hearing that the agents conducting the surveillance were instructed to minimize the nongambling interceptions. Although no testimony was presented regarding minimization instructions or procedures, it is clear from the number of calls upon which defendants concede minimization was

achieved that the government agents did make an attempt to minimize in accordance with Judge Watkins' order. The question posed is whether this attempt went far enough. Defendants assert that it did not; the government responds that it fully complied with the minimization directive.

From what has been presented by way of stipulation and defendants' exhibits, the court does not agree with defendants that minimization has not been achieved or that the calls pertaining to alleged gambling operations need be suppressed as evidence. Of the total calls intercepted, 38.08% were properly intercepted in their entirety as pertaining to alleged gambling activities. Of the non-authorized interceptions, 44.18% were minimized beyond dispute. This leaves only 17.75% of the calls with which the defendants can find fault, a small percentage in and of itself, but of even smaller significance when more closely examined. Of the 17.75%, well over half were, by defendants' own admission in the exhibits filed at the hearing, terminated before the call ended. This clearly demonstrates that, even as to the challenged 17.75%, the government was attempting to minimize. Moreover, defendants' exhibits further reveal that of this 17.75% almost all involved one or more of the defendants as parties, that many were of very short duration, and that many were of the sort that, while appearing innocuous at first glance, potentially could have developed into interceptable calls. While defendants contend a close analysis of this 17.75% of the calls by the court will reveal that they could have been either terminated or terminated sooner than they were, the court is not ready to assume the duty of second guessing the agents conducting the surveillance. To achieve minimization is not an easy task. Calls which at first appear irrelevant or innocuous may later develop into calls involving criminal activity and the fine line which separates the point at which one can or should realize a call is or is not inter-

ceptable is, for this reason, extremely difficult to determine, especially when the decision must be made instantaneously by agents on the scene and hearing the call contemporaneously to its being made. The court, thus, finds from the stipulations and exhibits presented that not only did the government make a good faith effort to minimize, it did in fact minimize the number of unauthorized interceptions in full compliance with Judge Watkins' order and the statute.

Furthermore, even when minimization has not been achieved, a suppression of the properly intercepted calls is not necessarily required. If the government totally ignores the minimization directive, total suppression may well be in order. *See* United States v. Scott, 331 F.Supp. 233 (D.D.C.1971); United States v. Leta, 332 F.Supp. 1357 (M.D. Pa.1971). But, when an attempt has been made to minimize which failed to achieve minimization, unlike the present case, the courts have consistently held that suppression of all evidence is not necessary, and that only the unauthorized interceptions are subject to suppression. United States v. Cox, 462 F. 2d 1293 (8th Cir. 1972); United States v. Askins, 351 F.Supp. 408 (D.Md. 1972); United States v. LaGorga, 336 F.Supp. 190 (W.D.Pa.1971); United States v. King, 335 F.Supp. 523 (S.D. Cal.1971); United States v. Leta, 332 F.Supp. 1357 (M.D.Pa.1971). Consequently, with the specific finding by the court that minimization was achieved and supported by the principle that even failure to minimize does not *per se* require suppression of all evidence, the court denies the motion to suppress on the basis of lack of minimization.

Accordingly, for the reasons stated herein, it is hereby ordered this 11th day of July, 1973, that

1. Defendants' motion to suppress evidence secured by electronic surveillance be and hereby is denied;

438

2. The government produce within thirty (30) days of the date of this Order affidavits as directed herein; and

3. The Clerk mail a copy of this Memorandum and Order to counsel for all parties.