**In the Matter of David T. DELLINGER et al.**

**No. 72 CR 925.**

United States District Court,
N. D. Illinois, E. D.

April 4, 1973.

James R. Thompson, Joel M. Flaum, Gary L. Starkman, Office of the U. S. Attorney, Chicago, Ill., George W. Calhoun, Dept. of Justice, Washington, D. C., for plaintiff.

Morton Stavis, Newark, N. J., for all defendants.

William M. Kuntsler, New York City, Leonard I. Weinglass, Newark, N. J., for all non-lawyer defendants.

## MEMORANDUM OF OPINION AND ORDER OF THE COURT

GIGNOUX, District Judge.

At the conclusion of their 1969 trial on Federal Anti-Riot Act and related conspiracy charges (18 U.S.C. §§ 2101 and 371), the trial judge, acting under Fed.R.Crim.P. 42(a), summarily convicted seven of the defendants and their two trial attorneys (the nine defendants herein) of contempt of court in violation of 18 U.S.C. § 401(1).[1] On May 11, 1972, the Court of Appeals reversed all nine convictions and remanded certain of the contempt specifications for trial before another judge. In re Dellinger, 461 F.2d 389 (7th Cir. 1972).[2] On November 21, 1972, the Court of Appeals reversed the convictions of the five original defendants who had been convicted on substantive charges, remanding the charges for a new trial if the government elected so to proceed. United States v. Dellinger, 472 F.2d 340 (7th Cir. 1972). The government has since

---

1. After six weeks of trial, the trial judge had previously declared a mistrial as to an eighth defendant, Bobby G. Seale. The court simultaneously convicted and sentenced Seale for contempt of court.

2. In a companion case, also decided on May 11, 1972, the Court of Appeals also reversed Seale's contempt conviction. United States v. Seale, 461 F.2d 345

(7th Cir. 1972). The contempt charges against Seale have been dismissed. *See infra.*

Pursuant to 28 U.S.C. § 292(c), the Chief Justice of the United States has designated the undersigned as the judge for the trial of the remanded contempt charges against the present nine defendants.

elected not to proceed with its substantive case.[3]

Presently before the Court are four pretrial motions: defendants' motion to dismiss, defendants' motion for a jury trial, defendants' motion for exculpatory material, and defendants' motion for disclosure of electronic or other surveillance. All have been fully briefed and argued.

## I

### Defendants' Motion to Dismiss

In their brief on appeal, defendants urged the Court of Appeals to exercise its supervisory power and dismiss the pending contempt charges on the ground that the conduct of the trial judge and the prosecutor toward the defendants was such that a continuance of the prosecution would further undermine the integrity of and regard for the judicial system, and therefore would not be in the public interest. The Court of Appeals, however, rejected the argument. In concluding his opinion, Judge Cummings stated:

> After careful consideration of the arguments of appellants and *amici curiae*, in our judgment, except as to those legally insufficient, none of the charges merits dismissal "in the interests of justice." In the words of Mr. Justice Cardozo, "Justice, though due to the accused, is due to the accuser also." Therefore, the contempt convictions of appellants are reversed and remanded for further proceedings not inconsistent herewith. In re Dellinger, *supra*, 461 F.2d at 401 (footnotes omitted).

Defendants now move a second time for a dismissal, again on the ground that a continuing prosecution would not be in the public interest. Their basis for renewing their motion is that three events have occurred subsequent to the May 11, 1972 opinion of the Court of Appeals remanding this matter for trial, which now furnish an independent basis for a determination that the public interest would not be served by a continuance of this prosecution. *Cf.* United States v. Barnett, 346 F.2d 99 (5th Cir. 1963). Specifically, the events are: (1) the government's election on November 17, 1972 to dismiss the contempt charges against their former codefendant, Bobby G. Seale, rather than permit inspection of the contents of a surveillance log as required by the Court of Appeals as a condition to further prosecution of Seale in the companion case of United States v. Seale, *supra*, 461 F.2d at 364–366; (2) the Court of Appeals' reversal of the substantive convictions of five of the present defendants on November 21, 1972 in an opinion which included the finding that "the demeanor of the judge and prosecutors would require reversal if other errors did not." United States v. Dellinger, *supra*, 472 F.2d at 391; and (3) the Supreme Court's determination on June 19, 1972 in the case of United States v. United States District Court, 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972), that the President, acting through the Attorney General, is without power to authorize electronic surveillance in internal security matters without prior judicial approval.

The Court will treat separately of the effect of each of these events on the present proceedings.

A. *The Dismissal of the Contempt Charges Against Seale.* In its opinion reversing Seale's contempt conviction, the Court of Appeals found that Seale had standing to entitle him to inspect a portion of one of four surveillance logs relating to Seale's contempt conviction, which the Court determined, after an *in camera* inspection, recorded an unlawful overhearing of a communication from a lawyer to Seale, in violation of Seale's Sixth Amendment right to the assistance of counsel. United States v. Seale, *supra*, 461 F.2d at 364–366. Accordingly, the court held that following remand the government must either per-

---

3. The government has also dismissed its substantive case against Seale.

States District Judge, Central District of California, sitting by designation.

mit Seale to inspect the portion of the log in question or "[i]f the Government is unwilling to permit such inspection, then the contempt proceedings against Seale must be dropped." *Id.* at 366. At the preliminary conference before this Court on November 17, 1972, the government formally moved to dismiss the contempt charges against Seale for the reason that "it would be inimical to our national security interests to disclose the contents to the defendant as required." The motion was granted, without objection.

■■ Defendants argue that in dismissing the contempt charges against Seale rather than permit his inspection of the surveillance log, the government has revealed a plan to "protect its own lawlessness," which the Court ought not to condone. As the Court of Appeals has held, however, these defendants have no standing to complain about any allegedly illegal surveillance as to Seale. In re Dellinger, *supra,* 461 F.2d at 392. Furthermore, the legal remedy that the courts have given to a defendant subjected to unlawful surveillance is not outright dismissal, but disclosure of the results of the surveillance and suppression of any evidence obtained or tainted thereby; dismissal is required only if the government elects not to disclose. Alderman v. United States, 394 U.S. 165, 181, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); United States v. United States District Court, *supra,* 407 U.S. at 324, 92 S.Ct. 2125. Seale was provided this relief in the present case: in compliance with the Court of Appeals' mandate, the government has elected to dismiss the charges against him. The law requires no more. Nor is there any basis for questioning the determination of the government that national security interests preclude disclosure of the *Seale* log.

The Court of Appeals specifically held that "the Seale logs require neither reversal nor dismissal of the contempt charges against appellants." In re Dellinger, *supra,* 461 F.2d at 392. This Court agrees.

· ■ The government's election to dismiss the contempt charges against Seale affords no new ground for a dismissal of the contempt charges against these defendants.

[4] **B.** *The Reversal of the Substantive Convictions in United States v. Dellinger.* In reversing the Anti-Riot Act convictions of five of the defendants, the Court of Appeals was indeed critical of the conduct of the trial judge and the prosecutors during the trial. United States v. Dellinger, *supra,* 472 F.2d at 385–391. Observing that "we are unable to approve the trial in this case as fulfilling the standards of our system of justice," *id.* at 385, the court concluded that "the demeanor of the judge and prosecutors would require reversal if other errors did not." *Id.* at 391. Defendants urge that since this determination of judicial and prosecutorial misconduct is now a matter of judicial record, the present contempt charges should be dismissed. There are two aspects of their argument. First, defendants say "it is clear that when the Circuit Court decided the contempt case it had not fully evaluated the record in this case" as regards judicial and prosecutorial misconduct. Second, they assert that the misconduct of the judge and prosecutor, as determined by the Court of Appeals, was so egregious as to render further prosecution of defendants unwarranted.

As to defendants' first point, it cannot be presumed that the Court of Appeals, the identical panel of which rendered all three of the decisions deriving from the original trial, did not until it rendered its decision in the substantive case evaluate the record in terms of judicial and prosecutorial misconduct. In deciding the contempt cases, the court was required to determine whether any of the contempt specifications did not amount to contempt as a matter of law. The court necessarily had to analyze the contempt charges in the context of the entire record, and its exhaustive review of the charges makes clear that it did so. In re Dellinger, *supra,* 461 F.2d at

397–401; United States v. Seale, *supra,* 461 F.2d at 366–371.

With respect to defendants' second point, the same argument was presented to and rejected by the Court of Appeals when it remanded the present contempt charges for trial and determined that, except as to those it had found to be legally insufficient, "none of the charges merits dismissal 'in the interests of justice.'" In re Dellinger, *supra,* 461 F.2d at 401. To say that this proceeding should be dismissed because defendants "were at all times acting in a purely responsive manner" and "their conduct was in response to stimuli created by the prosecution and the judge" is to ignore the specific holding of the Court of Appeals in this case:

> As we made clear in United States v. Seale, impropriety on the part of the trial judge cannot justify or excuse contemptuous conduct. However, judicial (or prosecutorial) provocation is to be considered by the new hearing judge in extenuation of the offense and in mitigation of any penalty to be imposed. In re Dellinger, *supra,* 461 F.2d at 401.

Defendants' argument also disregards the explicit language of the Court of Appeals in ruling upon the contempt charges against Seale:

> We note only that the standards of proper courtroom decorum are not altered and should not be applied differently because a trial may be characterized as political or because improprieties may be said to spring forth as if a "natural human response." Were it not for the misconceptions apparent in this case, we would have thought this too obvious to mention. United States v. Seale, *supra,* 461 F. 2d at 367.

Similarly, the argument fails to consider the following statement in Judge Fairchild's opinion for the court in the substantive case:

> We are not directly concerned here with definitively assessing the responsibility of these defendants or their counsel for deficiencies in the trial. *That will be the subject of proceedings on remand in In re Dellinger.*

We make the following observations only to make it clear that in considering complaints concerning the conduct of the trial judge and prosecuting attorneys we have avoided holding them responsible for conduct made reasonably necessary by the conditions at the trial arising from the activity of others. United States v. Dellinger, *supra,* 472 F.2d at 385 (emphasis supplied).

The Court of Appeals' reversal of the Anti-Riot Act convictions of five of the present defendants in United States v. Dellinger, *supra,* affords no new ground for a dismissal of the contempt charges against these defendants.

■ C. *The Supreme Court's decision in United States v. United States District Court.* The decision of the Supreme Court in United States v. United States District Court, *supra,* finally determining that domestic security surveillance without prior judicial approval is unlawful, was handed down on June 19, 1972, shortly after the Court of Appeals' opinions in the contempt cases against these defendants and Seale. Defendants argue that the Supreme Court's opinion made so unequivocal the illegality of internal security surveillance of a type in which the government has admittedly engaged in regard to several of the present defendants as to require dismissal of the contempt proceedings. Again, however, it is clear that defendants' argument has already been presented to and rejected by the Court of Appeals. In ruling upon the electronic surveillance issues in *Seale,* the Court of Appeals explicitly assumed, as the Sixth Circuit had previously held in United States v. United States District Court, 444 F.2d 651 (6th Cir. 1971), that domestic security surveillance was unlawful without prior judicial authorization. United States v. Seale, *supra,* 461 F.2d at 365 n. 39. See United States v. Dellinger, *supra,* 472 F.2d at 391. The fact that the Supreme Court has now con-

firmed this view provides no basis for terminating the present proceedings. .

The decision of the Supreme Court in United States v. United States District Court, *supra,* affords no new ground for a dismissal of the contempt charges against these defendants.

\* \* \*

Defendants' motion to dismiss is denied.

## II

### *Defendants' Motion for Jury Trial*

In remanding the contempt charges against these defendants for trial before another judge, the Court of Appeals stated:

If the judge to whom this case is referred for trial decides that the outside limit of a cumulative sentence for any appellant (except Mr. Weiner, who is not entitled to a jury trial by virtue of his short sentence) should be 6 months maximum, a jury trial will not be necessary for him. In re Dellinger, *supra,* 461 F.2d at 397.[4]

See also United States v. Seale, *supra,* 461 F.2d at 356.[5] Pursuant to the suggestion implicit in this language, at the November 17, 1972 preliminary conference before this Court, the government moved to limit the maximum sentence imposable against any defendant, in the event of a finding of guilt, to 177 days imprisonment. This motion was granted without objection, but without prejudice to the claim of defendants that they are nevertheless entitled to a jury trial. Defendants now move for such a trial, either as a matter of right or in the exercise of the Court's discretion. .

■ Since the maximum sentence which can now be imposed upon any defendant is less than six months imprisonment, the Supreme Court has made clear that defendants are not entitled to a jury trial as a matter of right.

Frank v. United States, 395 U.S. 147, 89 S.Ct. 1503, 23 L.Ed.2d 162 (1969); Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968); Cheff v. Schnackenberg, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966). Indeed, on the authority of *Frank, Bloom* and *Cheff,* the Court of Appeals has specifically so held in both this and the *Seale* case. In re Dellinger, *supra*; United States v. Seale, *supra.* Defendants nevertheless argue that regardless of the duration of sentence, there are other compelling reasons why they are entitled to a jury trial as of right. They urge that "the seriousness of the offense and the social and ethical judgments of the community relating thereto establish defendants' right to a jury trial independently of the duration of the sentence." Defendants concede, however, that they presented the same argument to the Court of Appeals. Although that court's opinion did not specifically refer to this argument, it cannot be assumed that the court did not consider and reject it. It is also clear that the argument has been rejected by the Supreme Court:

[T]his Court has held that in prosecutions for criminal contempt where no maximum penalty is authorized, the severity of the penalty actually imposed is the best indication of the seriousness of the particular offense. See, *e. g.,* Cheff v. Schnackenberg, *supra.* Thus, this Court has held that sentences for criminal contempt of up to six months may constitutionally be imposed without a jury trial. *Ibid.* Frank v. United States, *supra,* 395 U. S. at 149–150, 89 S.Ct. at 1505 (footnotes omitted).

*See also* Bloom v. Illinois, *supra,* 391 U.S. at 211, 88 S.Ct. 1477.

■ Defendants urge the Court to exercise its discretion in favor of a jury trial, even if they are not entitled to one

---

4. Defendant Weiner received only a two months and eighteen days sentence.

5. "If the judge to whom this case is referred for trial decides that the outside

limit of a sentence for Seale should be six months maximum including cumulation, that would obviate the necessity of having a jury on the remand."

as of right. Focusing on the unique nature of this case, which presented, they say, "a widely publicized conflict between a judge and prosecutor on one hand and attorneys and defendants on the other," defendants argue that "the confidence of the public in the workings of the judicial system would be challenged if sitting in judgment on this conflict is another judge." They point out that, in the words of Mr. Justice Frankfurter, "justice must satisfy the appearance of justice." Offutt v. United States, 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11 (1954). As the government observes, however, the factors of time and expense in this era of increasingly crowded judicial dockets render a jury trial particularly inappropriate for a case such as this. Defendants have indicated a protracted trial.[6] Having in mind the significantly greater amount of time which would be required for the selection of a jury and the presentation of evidence to a jury; the probability that, in light of the publicity this case has engendered, it would be necessary to sequester the jurors for an extended period of time; the likelihood that the jurors would have to examine a substantial part of the 23,000-page transcript of the substantive trial; and the possibility that, in order to avoid confusion of the jurors and to ensure a fair trial for each defendant,[7] severance of the trial of some defendants would be required, which would necessitate multiple trials, the Court is persuaded that such an expenditure of judicial, prosecutorial and citizen resources would not be justified in light of the limited sentences which can be imposed. Nor can the Court accept the suggestion that defendants' rights will be impaired or that the

appearance of justice will not be satisfied by having a judge who has had no prior contact with the case, or with any of the participants in the prior trial, sit in judgment. The policy considerations which defendants submit to this Court were implicitly rejected by the Supreme Court in *Frank, Bloom* and *Cheff.* They were presented to and rejected by the Court of Appeals in both this case and in *Seale.* The Court finds no sufficient reason for ordering a jury trial in the present case.

Defendants' motion for a jury trial is denied.

### III

### *Defendants' Motion for Exculpatory Material*

■ On the authority of Brady v. Maryland, 373 U.S. 83, 86–88, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), defendants have moved, pursuant to Fed.R. Crim.P. 16, for an order requiring the government to disclose any evidence in its possession, or which through diligence it could obtain, which is exculpatory in nature. The government has responded that it possesses "no material whatsoever that could, in any conceivable manner, be classified as within the *Brady* doctrine." The government has further replied that it recognizes the continuing obligation of disclosure imposed by *Brady,* as explicated in Moore v. Illinois, 408 U.S. 786, 794–795, 495, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972), and that if any exculpatory material comes to light during the course of trial, it will immediately be submitted to the defense.[8]

In light of the government's reply, defendants' motion for exculpatory material is denied.

---

6. Defendants project two to three months for the presentation of their defense.

7. There remain for trial a total of fifty-two specifications of contempt against nine defendants.

8. At oral argument, defendants' counsel specifically requested that the government review the prosecutor's file relating to the conspiracy trial and furnish to them

any information in the file which would indicate a deliberate plan on the part of the government to conduct the trial in such a manner as to provoke contemptuous conduct by the defendants. Government counsel stated that he has reviewed the file and that it contains no such material. Government counsel has agreed to file with the Court an affidavit to this effect.

## IV

### Defendants' Motion for Disclosure of Electronic or Other Surveillance

Relying on Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), defendants have moved, pursuant to Fed.R.Crim.P. 16 and 41, the Fourth, Fifth and Sixth Amendments to the Constitution, and 18 U.S.C. §§ 2510–2520 and 3504, for an order requiring the government to search for and disclose to them in advance of trial the records of any unlawful electronic or other surveillance concerning the defendants or their defense staff, including any such surveillance conducted by state or local governmental agencies or private parties. In addition, they seek an evidentiary hearing prior to trial to determine the adequacy of the government's search and disclosure, the legality of any surveillance, the standing of defendants with respect to any surveillance, and the extent to which the evidence to be offered by the government at the trial has been tainted by any surveillance or has been obtained in violation of the defendants' Sixth Amendment rights of counsel. In response to defendants' motion, the government has voluntarily agreed to disclose any overhearings of defendants or their premises to which defendants would be entitled under Alderman and United States v. United States District Court, 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972),[9] and any overhearings of defendants or their defense staff which potentially infringe on defendants' Sixth Amendment rights of counsel and to which defendants would be entitled under United States v. Seale, 461 F.2d 345 (7th Cir. 1972).[10] The government opposes, however, having to search for or disclose the results of the remaining types of surveillances requested by defendants, as to which the government asserts defendants have no standing to object.[11] The government also opposes defendants' request for an evidentiary hearing in advance of trial.[12]

9. In Alderman, the Supreme Court ruled that a defendant in a federal criminal case is entitled to disclosure of unlawful overhearings of "conversations of a [defendant] himself or conversations occurring on his premises, whether or not he was present or participated in those conversations." 394 U.S. at 176, 89 S.Ct. at 968. In United States District Court, the Court held that domestic security surveillance is unlawful without prior judicial approval.

10. In Seale, the Court of Appeals held, on the authority of O'Brien v. United States, 386 U.S. 345, 87 S.Ct. 1158, 18 L.Ed.2d 94 (1967); Hoffa v. United States, 385 U.S. 293, 304–309, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), and Black v. United States, 385 U.S. 26, 87 S.Ct. 190, 17 L.Ed.2d 26 (1966), that Seale had standing to inspect a portion of a surveillance log which recorded an unlawful overhearing of a communication from a lawyer to Seale in violation of his Sixth Amendment right to the assistance of counsel. Seale, supra, 461 F.2d at 364–366.

11. These include, e. g., overhearings of any communication at any place put under surveillance for the purpose of gathering evidence against any defendant or member of the defense staff, overhearings of any communication at any place where any defendant or member of the defense staff was present at the time of surveillance, and overhearings of any communication in which any defendant or member of the defense staff was named or otherwise referred to.

12. In addition, the Attorney General has turned over to the Court the logs of surveillances conducted without a court order for the purposes of gathering foreign intelligence information for an in camera determination of the legality of such surveillance, a question which was expressly left open by the Supreme Court in United States District Court, supra, 407 U.S. at 308–309, 321–322, 92 S.Ct. 2125. See also Giordano v. United States, 394 U.S. 310, 314–315, 89 S.Ct. 1163, 22 L.Ed. 2d 297 (1969) (Stewart, J., concurring). The Attorney General has also submitted to the Court the records of national security surveillances occurring prior to June 19, 1968 for an in camera determination of relevancy pursuant to 18 U.S.C. § 3504(a)(2). The Court's examination of both sets of records discloses that they have no conceivable relationship to the present case. But because of the Court's disposition of the present motion, infra, the Court does not reach

■ For the reasons which follow, the Court has concluded that, in the unique circumstances of this case, defendants are not entitled to the disclosure of surveillance, or to an evidentiary hearing with respect thereto, at least in advance of the trial.

Defendants are here charged with contempt of court by reason of their conduct at their 1969 trial. The government has stated that its evidence will be limited to "the transcript of the prior proceedings and perhaps the testimony of some people who were present and witnessed the defendants' conduct at the time." As the government points out, because of the nature of the present charges—contempt in the presence of the court—and the limited scope of its evidence, there is an inherent impossibility that electronic surveillance could have tainted the government's evidence in this case. Accepting the government's assurance that its evidence will concern only the courtroom behavior of the defendants, there would appear to be no conceivable way in which the government's evidence could have been derived from any overhearings which occurred outside of the courtroom. The contempt specifications of this case are limited to defendants' in-court behavior; electronic or other surveillance can only have been of out-of-court conversations.

Defendants strenuously contend that *Alderman* mandates the surveillance disclosures they seek. But *Alderman* was not a contempt case. In the cases before the Supreme Court in *Alderman*, the defendants had been convicted of substantive federal crimes. It was revealed, while the cases were pending in the Supreme Court, that the United States had engaged in electronic surveillance which might have violated the defendants' Fourth Amendment rights and tainted their convictions. The gov-

ernment conceded that the defendants were entitled to have excluded from their trial any evidence originating in unlawful electronic surveillance in violation of their Fourth Amendment rights. *See* Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Silverman v. United States, 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961); Silverthorne Lumber Co. v. United States, 251 U.S. 385, 391–392, 40 S.Ct. 182, 64 L. Ed. 319 (1920); Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). The question before the Court related to the procedure to be followed by the District Court on remand in determining whether any of the government's evidence supporting the convictions was the product of illegal surveillance. The Court held that surveillance records as to which any defendant had standing to object should be turned over to him without being screened *in camera* by the trial judge in order to determine whether they were "arguably relevant" to defendants' convictions. The Court thus stated the rationale for this holding:

> Admittedly, there may be much learned from an electronic surveillance which ultimately contributes nothing to probative evidence. But winnowing this material from those items which might have made a substantial contribution to the case against a petitioner is a task which should not be entrusted wholly to the court in the first instance. It might be otherwise if the trial judge had only to place the transcript or other record of the surveillance alongside the record evidence and compare the two for textual or substantive similarities. Even that assignment would be difficult enough for the trial judge to perform

the questions of the legality of foreign intelligence surveillance or of defendants' right to inspect the records of such surveillance or of surveillances prior to June 19, 1968.

The submitted documents will be returned to the Department of Justice, to be retained by the Department under the seal of the Court subject to any further order of this Court or any other court having jurisdiction.

unaided. But a good deal more. is involved. An apparently innocent phrase, a chance remark, a reference to what appears to be a neutral person or event, the identity of a caller or the individual on the other end of a telephone, or even the manner of speaking or using words may have special significance to one who knows the more intimate facts of an accused's life. And yet that information may be wholly colorless and devoid of meaning to one less well acquainted with all relevant circumstances. Unavoidably, this is a matter of judgment, but in our view the task is too complex, and the margin for ·error too great, to rely wholly on the *in camera* judgment of the trial court to identify those records which might have contributed to the Government's case. Alderman v. United States, *supra*, 394 U.S. at 182, 89 S.Ct. at 971 (footnote omitted).

Defendants are quite correct that *Alderman* requires disclosure to the defendants of unlawful surveillance records which might conceivably be the source of the government's evidence in the usual federal criminal case.[13] But this Court simply cannot understand *Alderman* to have mandated disclosure of surveillance records in a direct contempt proceeding such as the present one, in which the government's evidence will concern only the courtroom behavior of the defendants and in which it is· demonstratively impossible that electronic surveillance could taint the limited evidence upon which the government will rely. This case presents no question of taint and thus does not involve a "complex" exercise of judgment of the kind described by the Supreme Court in *Alderman. Cf.* Taglianetti v. United States, 394 U.S. 316, 317–318, 89 S.Ct. 1099, 22 L.Ed. 2d 302 (1969). *Alderman* did not speak to the unique character of a contempt proceeding, and the rationale of the *Alderman* disclosure rule is plainly in-

applicable in the circumstances here disclosed.

.. Defendants argue,. however, that their entitlement to pretrial disclosure of electronic surveillance in a contempt case is established by the decision of the Court of Appeals in *Seale.* United States v. Seale, *supra*, 461 F.2d at 364–366. In *Seale*, the Court of Appeals found that Seale had no standing under the Fourth Amendment to object to the electronic surveillance, which involved neither him nor his premises, but that he did have standing to complain that his Sixth Amendment right to the assistance of counsel may have been violated by the unlawful interception of a communication from a lawyer to Seale advising him with respect to his conduct in court. *Id.* at 364. Although Seale's Fourth Amendment rights had not been violated, the court held that he was entitled to an *Alderman* taint hearing, and that if the government was unwilling to permit Seale to inspect the questioned log, the contempt proceedings against him must be dropped. *Id.* at 366. There is no indication, however, that the court considered the applicability of *Alderman* to a contempt proceeding where the limited nature of the government's evidence makes it impossible that the evidence has been tainted by the unlawful surveillance. *Alderman*, of course, was a Fourth Amendment case; the Supreme Court was only concerned with the procedure to be followed by the District Courts in implementing the Fourth Amendment exclusionary rule requiring the exclusion from a criminal trial of any evidence which is the product of a Fourth Amendment violation. *See also* Giordano v. United States, *supra*, 394 U.S. at 313, 89 S.Ct. 1163 (Stewart, J., concurring); Taglianetti v. United States, *supra*, 394 U.S. at 317, 89 S.Ct. 1099. This Court is not· persuaded that, if squarely presented with the question, the Court of Appeals would

---

13. Defendants also correctly point out that . the Court of Appeals directed disclosure of surveillance in the present substantive case. United States v. Dellinger, *supra*, 472 F.2d at 392.

apply the *Alderman* rule in the circumstances of the present case.[14]

■ Defendants nevertheless take the position that any violation of their Sixth Amendment rights in connection with their prior conspiracy trial, such as the Court of Appeals found to have occurred as to Seale, automatically requires disclosure of the results of such violation prior to trial of the present contempt charges. In addition to *Seale,* they rely on O'Brien v. United States, 386 U.S. 345, 87 S.Ct. 1158, 18 L.Ed.2d 94 (1967); Black v. United States, 385 U.S. 26, 87 S.Ct. 190, 17 L.Ed.2d 26 (1966); Caldwell v. United States, 92 U.S.App.D.C. 355, 205 F.2d 879 (1953); and Coplon v. United States, 89 U.S. App.D.C. 103, 191 F.2d 749 (1951), cert. denied, 342 U.S. 926, 72 S.Ct. 363, 96 L.Ed. 690 (1952). Defendants' argument, however, goes far beyond anything decided in the cases upon which they rely. These cases held only that unlawful intrusion by government agents into the councils of the defense invalidated the trial at which it occurred. Hoffa v. United States, 385 U.S. 293, 307, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). Even assuming a Sixth Amendment violation which might have invalidated defendants' convictions in the 1969 conspiracy case, the evidence the government proposes to present in the present contempt proceeding can in no sense be the "fruit" of any such violation. *Hoffa* makes clear that, absent a showing that the evidence to be introduced at the present contempt trial could conceivably have been tainted in some way, or that the overheard conversation could be in any other way relevant to the instant charges, any such violation would not require either disclosure of the results or vitiation of the present proceeding. *Id.* at 304–309, 87 S.Ct. 408. *See also* Taglianetti v. United States, 398 F.2d 558, 569–572 (1st Cir. 1968), aff'd, 394 U.S. 316, 89 S.Ct. 1099, 22 L.Ed.2d 302 (1969); United States v. Balistrieri, 403 F.2d 472, 477–478 (7th Cir. 1968), vacated and remanded on other grounds, 395 U.S. 710, 89 S.Ct. 2032, 23 L.Ed.2d 654 (1969); United States v. Zarzour, 432 F.2d 1, 3–5 (5th Cir. 1970).[15]

It is possible that the Court has misinterpreted *Alderman* or misread *Seale.* It could also develop that the government's evidence will be more extensive than presently indicated, or that the possibility of taint may appear with re-

14. Apparently applying the principles of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Court of Appeals in *Seale* also observed that "if the overheard message reached Seale, it might at his option be used on remand to show his state of mind and motivation at the time of the [allegedly contemptuous] conduct." United States v. Seale, *supra,* 461 F.2d at 365–366. To the extent that the government has obtained by electronic surveillance, *whether lawful or unlawful,* information which is arguably exculpatory or otherwise favorable to a defendant, the government in its response to defendants' motion for exculpatory material has recognized its continuing obligation of disclosure under the *Brady* doctrine and has assured the Court that if any exculpatory material comes to light during the course of the trial, it will immediately be submitted to the defense. *See* III, *supra.* Defendants' right to discover exculpatory material does not depend on *Alderman* principles.

15. In addition to the records of national security surveillances conducted for the purposes of gathering foreign intelligence information and the records of national security surveillances occurring prior to June 19, 1968, *see* n. 12, *supra,* the Attorney General, subsequent to oral argument on the instant motion, has turned over to the Court for *in camera* examination the records of the remaining surveillances of the nine defendants in this case. Government counsel has also furnished an affidavit to the effect that there was no surveillance of defendants or their attorneys during the period of their 1969 conspiracy trial. The submitted records disclose no surveillance of defendants or their attorneys during the conspiracy trial. The Court's examination further reveals that the overhearings recorded before and since the 1969 trial were not of communications between defendants and their attorneys. It thus appears that, insofar as the present defendants are concerned, no violation of their Sixth Amendment rights has occurred.

spect to the cross-examination of defense witnesses or evidence which the government may present in rebuttal to the presently unknown defense case. It does not follow, however, that the wide range of questions relating to electronic surveillance which are raised by defendants' motion must be determined in advance of trial. There is nothing in *Alderman* which specifies the time when such determinations are to be made; it is evident that the procedure to be used in implementing its ruling was left to the sound discretion of the trial judge. *See* Giordano v. United States, *supra,* 394 U.S. at 314, 89 S.Ct. 1163 (Stewart, J., concurring). Nor did the Court of Appeals in *Seale* indicate whether the taint hearing was to be held before or after Seale's trial.

Defendants contend that the pretrial determination of electronic surveillance issues and pretrial disclosure of illegal surveillance are required by Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520, and 18 U.S.C. § 3504, enacted as part of the Organized Crime Control Act of 1970, as expounded in Gelbard v. United States, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972). Title III bars the use as evidence of the contents and fruits of illegal wire or oral interceptions, 18 U.S.C. § 2515, and provides procedures for moving to suppress such evidence, 18 U.S.C. § 2518 (9, 10). 18 U.S.C. § 3504 supplements Title III by specifying procedures to be followed "upon a claim by a party aggrieved that evidence is inadmissible be-

cause" of an illegal interception. The Supreme Court in *Gelbard* made clear that the evidentiary prohibitions of Title III and Section 3504 require pretrial determination of the issues presented by a claim that evidence is inadmissible because derived from an illegal interception, and pretrial suppression of any such evidence and its fruits. It is clear, however, that neither statute comes into play until some showing has been made by a defendant that a specific item of evidence to be offered by the government would be inadmissible as evidence derived from an illegal interception.[16] As previously noted in the discussion of *Alderman,* the limited nature of the evidence the government has stated it intends to offer in this case precludes the possibility that it could be inadmissible because the product of any illegal interception.

. In numerous cases, both before and since *Alderman,* the District Courts have exercised their discretion to determine surveillance questions and to hold any necessary hearings after the trial, when the nature of the government's evidence can be known. *See, e. g.,* United States v. Nolan, 420 F.2d 552, 553–554 (5th Cir. 1969); United States v. Addonizio, 313 F.Supp. 486, 492–493 (D.N.J.1970); United States v. McCarthy, n.16 *supra,* 292 F.Supp. at 943–945; United States v. Birrell, n.16 *supra,* 269 F.Supp. at 725–729.[17] As the court observed in United States v. McCarthy, *supra:*

We think, therefore, that the appropriate time to hold such hearings is after trial. If the trial results in

16. Although 18 U.S.C. § 2518(10) and Fed.R.Crim.P. 41(e) provide that a motion to suppress shall be made before trial, neither specifies when a hearing is to be held. *See* United States v. McCarthy, 292 F.Supp. 937, 943 (S.D.N.Y. 1968); United States v. Birrell, 269 F.Supp. 716, 725–726 (S.D.N.Y.1967), aff'd, 399 F.2d 343, rev'd. on other grounds, 400 F.2d 93 (2d Cir. 1968).

17. As authority that hearings on all electronic surveillance issues must be held before trial, defendants cite numerous recent decisions, *e. g.,* United States v.

. Giordano, 469 F.2d 522 (4th Cir. 1972); United States v. Eastman, 465 F.2d 1057 (3rd Cir. 1972); United States v. Askins, 351 F.Supp. 408 (D.Md.1972); United States v. Lanza, 349 F.Supp. 929 and 341 F.Supp. 405 (M.D.Fla.1972); United States v. Ripka, 349 F.Supp. 539 (E.D. Pa.1972); United States v. DeCesaro, 349 F.Supp. 546 (E.D.Wis.1972); United States v. Narducci, 341 F.Supp. 1107 (E.D.Pa.1972); United States v. Iannelli, 339 F.Supp. 171 (W.D.Pa. 1972); United States v. Aquino, 338 F. Supp. 1080 (E.D.Mich.1972); United States v. Baldassari, 338 F.Supp. 904

an acquittal, there is no need for a hearing. If it results in a conviction, the trial judge will be intimately familiar with the evidence and able to judge with precision whether any of it was tainted or the fruit of the poisoned tree. 292 F.Supp. at 944–945 (footnote omitted).

In the unique circumstances of this case, it is particularly appropriate to defer consideration and determination of any surveillance issues until after the trial. Only then will the exact nature of the government's evidence be known, and only then can any possible taint be determined. Defendants have raised the specter of lengthy surveillance hearings. If there is an acquittal, no hearings will be necessary. If the government's evidence does not develop precisely as anticipated, pretrial hearings might well prove fruitless, and duplicate post-trial hearings might be necessary. Further delay in the ultimate disposition of the case would be inevitable. Especially where, as here, it is conceptually impossible that the contemplated government evidence can have been derived from unlawful surveillance, the likelihood of prejudice to defendants is remote. Sound reason and the orderly administration of justice must foreclose the exhaustive pretrial searches and hearings requested by defendants.

Defendants' motion for disclosure of electronic or other surveillance is in all respects denied, but without prejudice to defendants' right to renew their motion at or after trial upon a showing that the government's evidence has been, or conceivably could have been, tainted by unlawful surveillance.

## V

## Order

In accordance with the foregoing, it is *ordered* as follows:

1. Defendants' motion to dismiss is denied.

2. Defendants' motion for jury trial is denied.

3. Defendants' motion for exculpatory material is denied.

4. Defendants' motion for disclosure of electronic or other surveillance is denied, without prejudice to defendants' right to renew such motion at or after trial upon a showing that the government's evidence has been, or conceivably could have been, tainted by unlawful surveillance.

(M.D.Pa.1972). These cases, however, all involve instances where the government made known prior to trial that it intended to offer as evidence the fruits of electronic surveillance. Defendants can cite no case where the government had not indicated such an intention in which a pretrial hearing was held, other than

United States v. Dellinger, *supra*, 472 F.2d at 392 and Nolan v. United States, 423 F.2d 1031, 1041–1045 (10th Cir. 1970), where defendants had made a strong showing of likelihood that the government's evidence would be tainted. There is no conceivable likelihood of such taint here.