**In the Matter of David T. DELLINGER et al., Defendants-Appellants.**

**No. 73–2107.**

United States Court of Appeals, Seventh Circuit.

Heard April 22, 1974.

Decided Sept. 6, 1974.

Rehearing En Banc Denied Oct. 16, 1974.

Fairchild, Circuit Judge, filed a concurring opinion.

Morton Stavis, Doris Peterson, William M. Kunstler, Center for Constitutional Rights, New York City, N. Y., for defendants-appellants.

Henry F. Field, Chicago, Ill., for amicus curiae.

James R. Thompson, U. S. Atty., Gary L. Starkman, Asst. U. S. Atty., Chicago, Ill., for United States.

Before FAIRCHILD, CUMMINGS and PELL, Circuit Judges.

CUMMINGS, Circuit Judge.

This appeal is from the second criminal contempt adjudication resulting

from incidents occurring during the celebrated "Chicago 7" Anti-Riot Act conspiracy trial. The substantive convictions were reversed. United States v. Dellinger, 472 F.2d 340 (7th Cir. 1972), certiorari denied, 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706. We also reversed the original contempt convictions. In re Dellinger, 461 F.2d 389 (7th Cir. 1972).

Pursuant to 28 U.S.C. § 292, the Chief Justice of the United States thereafter designated District Judge Gignoux to try the contempt case.[1] On the remand various pre-trial motions were denied. In re Dellinger, 357 F.Supp. 949 (N.D. Ill.1973). At the trial, the Government's case-in-chief consisted of the introduction of the transcript of the Anti-Riot Act trial. After the Government rested, the district court acquitted John Froines and Lee Weiner and dismissed a number of contempt specifications against the remaining defendants in an unreported memorandum opinion dated November 6, 1973. The defendants' renewed motion to dismiss was denied in the same opinion. Thereafter, the remaining defendants testified in their own behalf. In rebuttal the Government offered evidence to refute testimony of a defense witness that the "defense camp" had been subjected to surveillance by military intelligence officers during the Anti-Riot Act trial. At the close of all the evidence, defendants Leonard Weinglass, Rennard Davis and Thomas Hayden were acquitted. Judgments of acquittal were also entered as to several of the contempt specifications against the remaining defendants. The district court found David Dellinger, Abbott Hoffman, Jerry Rubin and William Kunstler guilty of various other contempts but did not impose any fines or sentences. In re Dellinger, 370 F.Supp. 1304 (N.D.Ill.1973).

*Whether Lawyer Kunstler Was Contemptuous*

The first argument on appeal is that Kunstler's conduct described in Kunstler specification VI does not constitute contempt of court. This specification is set out at 370 F.Supp. 1337–1338[2] and need not be quoted herein. The matter complained of in specification VI consisted of an extended outburst from Mr. Kunstler, one of the attorneys for the defendants, after Judge Hoffman, the trial judge in the conspiracy case, refused to relieve Kunstler of his commitment to conclude his case with the testimony of an authenticating cameraman, plus certain documents. Thus Mr. Kunstler was prevented from presenting the Reverend Ralph Abernathy as a witness for the defendants.

We agree with Judge Gignoux that the extent and violence of Kunstler's diatribe and the bitterness and anger displayed "constituted a vicious personal attack on the judge which could only have served to vent his spleen." 370 F.Supp. at 1319. In no way can Kunstler's remarks be considered as merely heated legal argument and therefore non-contemptuous. Because of the extreme nature of the attack on the trial judge, the remarks of counsel created an imminent prejudice to a fair and dispassionate proceeding, thus constituting an actual and material obstruction of the judicial process. See 461 F.2d at 400. Moreover, as the trial judge found, Kunstler's conduct "resulted in an entirely unnecessary and not insignificant delay and disruption of the proceedings" (370 F.Supp. at 1320), reinforcing his holding that there was an actual and material obstruction of the administration of justice. Before concluding with respect to this specification, it should be noted that at their close, Kunstler's remarks

---

1. The original contempt convictions were summary adjudications. Those now under review were imposed after a full trial.

2. In reproducing specification VI in the opinion below, the words "The Court:" were in-

advertently omitted from the first line of the first quotation in the specification (line 9 of the specification as published in 370 F. Supp. at 1337).

predictably precipitated shouts of "right on" and applause, again satisfying obstruction standards.[3] 461 F.2d at 399–400.

██ Kunstlers specification VII (reproduced at 370 F.Supp. 1338–1341) is also said not to constitute contempt of court. After Judge Hoffman had ruled that Reverend Abernathy not be permitted to take the stand, he ordered defense counsel not to make any reference before the jury to the fact that defendants wanted Abernathy to testify. Kunstler replied he would not abide by such a ruling and therefore would have to be sent to jail. Despite the trial judge's order, when Dr. Abernathy arrived Kunstler said he would like to put him on the stand. Kunstler continued to mention Dr. Abernathy's name and hugged him before the jury. The facts under this specification are clearly contempt because Kunstler violated a court order. Further, he obstructed justice by putting before the jury information that had been ruled inadmissible, making it more difficult for the jurors to decide the case according to the law as interpreted by the district judge. As we previously held, lawyers are required to obey even incorrect orders; the remedy is on appeal. 461 F.2d at 398.

Kunstler argues that because he got away with violating it once, there was no longer an operative order prohibiting his mentioning Dr. Abernathy to the jury. In our judgment, this is frivolous. Kunstler's renewal of his motion to call Dr. Abernathy as a defense witness in the presence of the jury and his persistent arguments after being directed to stop clearly violated Judge Hoffman's orders to make no reference before the jury to the fact that he and his colleagues wanted Dr. Abernathy to testify and not to renew his motion. Since the specification quotes Judge Hoffman's

orders verbatim, there could be no doubt what Kunstler was charged with violating. Therefore, we are not "sustaining the trial court by treating the conviction as a conviction upon a charge not made." *Eaton v. City of Tulsa,* 415 U.S. 697, 699, 94 S.Ct. 1228, 1230, 39 L.Ed.2d 693; see also *Taylor v. Hayes,* 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897.

*Whether Messrs. Dellinger, Hoffman and Rubin Were Contemptuous*

The non-lawyer defendants contend that the nine specifications involving statements made by them at the Anti-Riot Act trial and the two specifications involving wearing judicial robes by Abbott Hoffman and Jerry Rubin do not constitute contempt.

██ The statements in question delayed the trial, thereby satisfying the obstruction requirement. Although in some of the specifications, one or two sentences may have been justified, each specification contained an extended colloquy not required by the circumstances. As Judge Gignoux stated with respect to Dellinger IV (reproduced at 370 F.Supp. 1327), in light of the extent of these Dellinger comments at the Anti-Riot Act trial and their offensive character, he knew or should have known that his conduct was wrongful, and his interruptions "so disrupted the course of the proceedings that an unnecessary and not insubstantial delay ensued." 370 F.Supp. at 1312. Similar permissible findings were made with respect to Dellinger V, VI, VII, VIII, IX and X (reproduced at 370 F.Supp. 1328–1335, 1341–1342).

As to Abbott Hoffman's specification VI and Jerry Rubin's specification V (reproduced at 370 F.Supp. 1344–1347), the district court was justified in concluding that these defendants' persistent interjections occasioned a substantial delay in the progress of the proceedings

---

3. Kunstler's remarks were also larded with interruptions of "Voices: Right On," but we do not rely on these interruptions in view of defendants' representation that the trial tapes show that they were in a single soft

voice emanating from a defendant or someone present at defense counsel's table. No such representation has been made with respect to the applause and shouts at the conclusion of Kunstler's comments.

and constituted misbehavior in the presence of the court. 370 F.Supp. at 1314–1315.

■ Hoffman specification VII and Rubin specification VI (set out at 370 F.Supp. 1347–1348) involved the wearing of judicial robes by those defendants at the February 6th morning session of the Anti-Riot Act trial. As the district court found, the Anti-Riot Act trial transcript disclosed that this conduct occasioned an entirely unnecessary and not insignificant delay in the proceedings. 370 F.Supp. at 1315. The seriousness of this misbehavior supported the district court's conclusion that the conduct constituted an actual and material obstruction of the administration of justice. See United States v. Seale, 461 F.2d 345, 369 (7th Cir. 1972).

*Imposition of Sentence on Mr. Kunstler Was Unrequired*

■ Defendant Kunstler asserts that Judge Gignoux could only acquit or dismiss the charges and not convict him without imposing a sentence. This is a misapprehension of the law. A judge trying a criminal contempt case may find violations and nevertheless impose no sanctions. See United States v. Dickinson, 465 F.2d 496, 513 (5th Cir. 1972). We see no reason why the judge must dismiss to achieve this result, though that option is open at least to the court which initiated the contempt proceedings. See United States v. Barnett, 346 F.2d 99 (5th Cir. 1965) (*en banc*). Whether or not we disagree with the non-sentence is immaterial, for the trial judge was within his rights in convicting but refraining from imposing punishment.

■ Kunstler attaches significance to the fact that the trier of contempt adverted to "the potentially grave consequences of a criminal contempt conviction to a member of the bar" (370 F. Supp. at 1322). This remark simply recognized a factual possibility over which the judge had no control; it certainly does not amount to an exercise of

disciplinary powers nor an invitation for disciplinary proceedings to be commenced in the New York courts. Therefore, the district court did not exceed its criminal contempt power in this respect.

*Conduct of Conspiracy Judge and Prosecutors Does Not Necessitate Reversal*

■ Defendants contend that the conduct of the judge and prosecutors at the Anti-Riot Act trial requires dismissal for their contempt. We have twice rejected this contention in the *Seale* and *Dellinger* contempt cases. See 461 F.2d at 361–363, 401. Nothing in this contempt trial persuades us to alter our prior conclusion, for provocation, however shocking, is no defense to contempt.

*Adequacy of* Falk-*type Hearing*

■ Defendants urge that their motion to dismiss should have been granted under United States v. Falk, 479 F.2d 616 (7th Cir. 1973) (*en banc*) because the Anti-Riot Act prosecutors were not also charged with contempt. In its unreported memorandum opinion overruling defendants' motion to dismiss, the district court refused to apply *Falk* because defendants failed "to support their allegation that the prosecution of the present charges amounts to a discriminatory and unconstitutional prosecution." The court then concluded that defendants had not made a satisfactory showing that the "United States, on behalf of the [Anti-Riot Act] court, has pursued the present prosecution for discriminatory and unconstitutional purposes." Judge Gignoux reaffirmed these findings at the close of the evidence (Tr. 4150).

Defendants' reliance on *Falk* is misplaced. That case was remanded so that the defendant could have a hearing on his claim of selective prosecution. Here such a hearing took place when United States Attorney Thompson gave more than fifty pages of testimony on this subject. His account satisfied the district court and now us that the Govern-

ment had a rational basis for prosecuting the case. No further hearing is needed.

*Electronic Surveillance*

 Defendants assert that the Government's electronic surveillance of defendants and their counsel should have been disclosed to them before trial, and that there should have been an evidentiary hearing with respect to the impact of the surveillance. In the district court, the Government agreed to turn over to defendants any such material which might infringe defendants' Sixth Amendment right to counsel, any such material that might be exculpatory under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, and any material disclosure of which was required by Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176. 357 F.Supp. at 957, 960, n. 14.[4] Our order of May 1, 1973, in denying defendants' April 18, 1973, petition for writ of mandamus with respect to electronic surveillance, was fashioned to enforce the first two parts of this governmental undertaking. However, no such material was discovered. As the United States Attorney for the Northern District of Illinois advised Judge Gignoux and defendants on May 23, 1973:

"As in the past, we recognize our obligation to turn over any surveillance that can be classified as exculpatory or capable of infringing upon the sixth amendment rights of these defendants to defend against the pending contempt charges. However, we are presently unaware of any surveillance material that can be so classified."

Brady v. Maryland does not entitle defendants to an adversary hearing with respect to such materials.

In accord with acceptable procedure,[5] government counsel furnished the district court with an affidavit that there was no surveillance of defendants or their counsel during the period of their 1969 Anti-Riot Act trial. The district court and we in turn have found that the overhearings submitted *in camera* show no communications between defendants and their counsel during, before and since that trial. See 357 F. Supp. at 960, n. 15.

The Government turned over to Judge Gignoux for his *in camera* inspection logs of all overhearings requested by defendants' disclosure motion. See 357 F. Supp. 957, n. 12 and 960, n. 15. Subsequently, the Government turned over to the district judge additional logs in which defendants Froines' and Davis' voices were identified, after which the surveillances were cut off in accordance with the July 14, 1969 instructions of the Attorney General.[6] After the oral argument before us, in accordance with our order of May 7, 1974, the Government supplied still additional logs to us for *in camera* inspection. These included Anti-Riot Act trial period communications of Messrs. Davis and Dellinger that had not been discovered until after the district court's judgment. Although some of the defendants were overheard in those logs, the logs have nothing to do with the Anti-Riot Act or contempt cases.

The district court held that Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176, did not require an evidentiary hearing to determine the relevancy of the logs because the Government was relying on the transcript before Judge Hoffman to show defendants' contempts. Therefore, the Government's evidence could not have been derived from the overhearings. 357 F.Supp. at 958–960.

4. Because of Judge Gignoux' decision in its favor, the Government abandoned its initial undertaking to turn over *Alderman* material to defendants.

5. See Korman v. United States, 486 F.2d 926, 931 (7th Cir. 1973).

6. From our examination of the logs, it is apparent that, consistently with the Attorney General's instructions, the wiretapping ceased when defendants or their counsel were identified.

■ To rebut this reasoning, defendants assert that the logs might have helped in their defense of lack of intent. We have examined all the logs; none of them relates to defendants' intent. This case is therefore distinguishable from the *Seale* case where one of the logs "was a link in a communication from a lawyer to Seale advising him with respect to his conduct in court." 461 F.2d at 364. Seale could use the log on remand to show his state of mind and motivation at the time of the conduct, so that a taint hearing was necessary. 461 F.2d at 365–366. Here, on the other hand, no such overhearings occurred. Furthermore, if a log with respect to defendants' lack of intent had been uncovered, the Government was obliged to tender it to defendants in accordance with its express undertaking (357 F.Supp. at 960, n. 14), which this Court further obligated the Government to follow in our order of May 1, 1973.

Defendants rely on United States v. Huss, 482 F.2d 38 (2d Cir. 1973). There government informer Siegel had been overheard illegally by the United States on six different occasions. When the Government attempted to use Siegel as a witness at the criminal trial of two others, he refused to testify despite an immunity grant. He successfully relied on the Second Circuit rule that the Government cannot rely on testimony of a witness discovered through illegal taps. The civil contempt order entered against him was vacated because the Government's destruction of the tapes of his overheard conversation prevented disclosure and an *Alderman* hearing. No comparable situation is presented here where these defendants were tried for their misconduct in open court rather than for any refusal to testify. Here the Government is not relying on possibly tainted evidence, so that *Huss* is inapt.

Defendants have relied on Dellinger v. Mitchell, Civil Action No. 1768–69 (D. D.C.) and their *in camera* disclosures to us growing out of that pending case to buttress their electronic surveillance arguments. Our review of that material and of Mr. Kunstler's affidavit concerning United States v. Means, 374 F.Supp. 321 (D.S.D.) and Judge Nichol's opinion denying defendants' motion to dismiss therein [7] do not persuade us that the Government has misrepresented the status of the wiretaps here. Nothing in any of the wiretaps supports defendants' assertion that the Government thereby molded its approaches to create a picture of disruption by defendants at the Anti-Riot Act trial. In no sense can the transcript of that trial be considered the fruit of any illegal surveillance.

As the district court held, the limited nature of the evidence offered by the Government "precludes the possibility that it could be inadmissible because the product of any illegal interception." 357 F.Supp. at 961. Since the evidence offered did not and could not have come from any electronic surveillance, disclosure of the electronic surveillance records to defendants and an *Alderman* hearing were unncessary.

*Quashing the Subpoenas to the Army and the Federal Bureau of Investigation*

■ In an attempt to show that the Government had harassed the defense during the Anti-Riot Act trial, defendants introduced the testimony of John O'Brien, a former military intelligence agent. We have reviewed that testimony and are satisfied that Judge Gignoux could reasonably conclude, as he did, that Mr. O'Brien's testimony should be rejected as "utterly incredible."

In order to attempt to corroborate O'Brien, the defendants served subpoenas on Brigadier General Patton, Deputy Chief of Military Intelligence of the Army, and on Richard G. Held, the Agent in Charge of the FBI's Chicago office. In general, these subpoenas called for all of O'Brien's reports from March 1969 to March 1970 as well as reports of others possibly engaged in sur-

---

7. The opinion was filed with us by defendants on April 22, 1974.

veillance of defendants and their counsel. The FBI filed an affidavit that none of the subpoenaed reports could be found in its search. A similar certificate was filed by the Army. However, both agencies submitted documents *in camera* to Judge Gignoux. After examining the documents, the district court concluded that "the submissions both submitted by the Federal Bureau of Investigation and by the Pentagon contained no reports, records or other material which in any way related to any surveillance of the defendants or their counsel during the period March, 1969, to March, 1970, or which in any way are material or relevant to any of the issues before the Court in the present proceeding" (Tr. 4156). The Government's motions to quash the subpoenas were therefore granted.

In view of the court's finding that none of the submitted material was relevant or material, it was permissible to quash the subpoenas. See United States v. Escobedo, 430 F.2c. 603, 610, n. 7 (7th Cir. 1970); 2 Orfield, Criminal Procedure under the Federal Rules § 17:82 at 666 (1966). The district court also refused to grant the defendants' motion for an order compelling General Patton and Mr. Held to testify. Because of the affidavits of the records custodians that the desired search had been made, there was no necessity to receive testimony from them. In fact, Rule 27 of the Federal Rules of Criminal Procedure was designed to obviate such testimony.[8] United States v. Rogers, 454 F.2d 601, 605 (7th Cir. 1971). Furthermore, the refusal to compel testimony from General Patton and Mr. Held was supported by the court's finding that defendants had not made the requisite "showing of illegal surveillance or infiltration of the defense camp."

Since the district court found on the basis of the entire record beyond a reasonable doubt. that "there was no surveillance, infiltration or intrusions into the councils * * * of the defense during the period of these [Anti-Riot Act] proceedings; that is between March of 1969 and March of 1970" (Tr. 4153), we conclude that its rulings as to the subpoenas and the custodians of the documents were correct.

*Right to a Jury Trial*

■ Defendants have renewed their contention that they were entitled to a jury trial. At a pretrial conference the district judge granted the Government's motion to limit the maximum sentence imposable against each defendant to 177 days' imprisonment. See 357 F.Supp. at 955. Since this meant that no defendant would serve more than six months' imprisonment, a jury trial was unnecessary in accordance with our holding on the prior contempt appeal. 461 F.2d at 397; see also Taylor v. Hayes, 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897; Codispoti v. Pennsylvania, 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912; United States v. Seale, 461 F.2d 345, 356 (7th Cir. 1972).

Defendants insist that they were entitled to a jury trial as a matter of discretion even if not as a matter of right. For the reasons articulated by Judge Gignoux (357 F.Supp. at 956), there was no abuse of discretion in declining to order a jury trial.

*The Convictions Need Not Be Set Aside to Insure the Appearance of Justice*

■ The defendants' final point is that the entire record of this case indicates that the judgment below must be reversed to preserve the appearance of justice. We cannot agree.

Upon remand, the appearance of justice was fully satisfied. First of all, the Chief Justice appointed a fair-minded judge from another jurisdiction who had nothing to do with the original contempt adjudications or the conspiracy trial. When we reversed the original contempt convictions, we deemed eighteen of the

8. Rule 27 incorporates by reference Rule 44 of the Federal Rules of Civil Procedure. Rule 44(b) authorizes the receipt of appropriate written statements as evidence that the records do not contain requested materials.

821

original contempt specifications and part of another to be legally insufficient. 461 F.2d at 400–401. This left 141 of the specifications for possible trial. However, the Government dismissed 89 of those unilaterally, leaving only 52 of the remanded contempt charges for trial. 370 F.Supp. at 1307. At the conclusion of the Government's case, the court dismissed two of the specifications and acquitted the defendants of 24, so that only 26 specifications remained. *Idem.* At the completion of the trial, defendants were found not guilty of thirteen specifications. 370 F.Supp. at 1323. Thereafter the present defendants were found guilty of the charges in only thirteen specifications. 370 F.Supp. at 1323–1324. This drastic winnowing process surely demonstrates the dispassionate nature of the trial.

Having reviewed the record herein, we conclude that defendants received sufficient procedural fairness to satisfy the appearance of justice. To insure continuing respect for the judicial system, it was necessary to try the defendants for the overwhelming misconduct they demonstrated at the conspiracy trial. In not imposing fines or sentences, the district judge gave weight to the various factors that defendants have urged in favor of dismissal.

The contempt convictions are affirmed.

FAIRCHILD, Circuit Judge (concurring).

I concur in the opinion, including affirmance of the finding on Kunstler specification VI. I do find it necessary, however, to recognize the difficulty in determining objectively that the conduct involved in this specification amounted to an actual obstruction of justice. It seems to me that in applying and preserving the federal rule that disrespect is not punishable contempt unless the conduct amounts to an actual obstruction of justice (cases cited, United States v. Seale, 461 F.2d 345, 369 (7th Cir. 1972)) we are willing to presume or infer the existence of obstruction where the conduct appears to us extremely inappropriate, indeed outrageous, and shocking.